**Barry J. KOERPEL, M.D., Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, and Carolyn K. Davis, Administrator, United States Health Care Financing Administration, Defendants-Appellees.**

No. 85–1871.

United States Court of Appeals, Tenth Circuit.

July 23, 1986.

Ronald E. Nehring, of Prince, Yeates & Geldzahler (David K. Broadbent, with him on brief), Salt Lake City, Utah, for plaintiff-appellant.

Jay A. Swope, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., and Lawrence J. Leigh, Asst. U.S. Atty., with him on brief), Salt Lake City, Utah, for defendants-appellees.

Before BARRETT, LOGAN and BALDOCK, United States Circuit Judges.

BARRETT, Circuit Judge.

Barry J. Koerpel, M.D., (Appellant) appeals from the Memorandum Decision and Order of the District Court for the District of Utah which denied his request for a preliminary injunction. Dr. Koerpel sought the injunction to prevent the Department of Health and Human Services (HHS) from enforcing its decision to exclude him from eligibility for reimbursements under the Medicare program and from publishing notice of its action. As a nephrologist (renal/kidney specialist), most of the procedures Dr. Koerpel performed were substantially funded through Medicare. Consequently, a large portion of Dr. Koerpel's income was derived from Medicare reimbursements for services rendered.

Dr. Koerpel was notified by the Office of the Inspector General of Health and Human Services (OIG) that it was proposing to exclude him from eligibility for Medicare reimbursements for a period of ten years. The proposed exclusion was based on information furnished by Blue Cross and Blue Shield of Utah (BCBS), Medicare's fiscal intermediary in Utah. As an intermediary, BCBS was authorized to conduct the day-to-day administrative functions of the Medicare program. The medical records of a random sample of Dr. Koerpel's patients were reviewed by various doctors and a panel of experts selected by BCBS. BCBS requested various progress notes from Dr. Koerpel's office files to supplement the records that BCBS had but he provided only admission histories and physical and discharge summaries. OIG reviewed all of the BCBS evidence and conclusions and determined that Dr. Koerpel had furnished substandard care to his patients; he had prescribed excessive kidney dialysis for some and underdialyzed others.

After Dr. Koerpel was notified of his proposed exclusion he was given the opportunity to respond to the allegations against him with written evidence. Dr. Koerpel did respond. The patients whose care was found to be substandard were identified and a copy of the transcript of the panel's review session and notes were provided to Dr. Koerpel. The doctor was also provided the opportunity to respond in person and with an attorney before a Deputy Assistant Inspector General of HHS, which he did. OIG reviewed everything which had been presented and again determined that Dr.

Koerpel would be terminated from program participation. OIG was then required by law to notify the public of its decision with a statement of the accompanying reasons by publishing such in local newspapers.

Initially, Dr. Koerpel sought a temporary restraining order (TRO) to prevent the federal appellees from publishing a notice of his disqualification in local Utah newspapers and from enforcing their decision to exclude him from reimbursement. Dr. Koerpel objected to the nature and timing of the process that had been afforded him. He argued that notice and an opportunity to respond were constitutionally inadequate in light of the significant liberty and property interests at stake. Dr. Koerpel maintained that nothing short of a full blown evidentiary pre-termination hearing with the right to confront witnesses[1] could safeguard his due process rights. The district court granted Dr. Koerpel's motion for a TRO.

Dr. Koerpel then moved for a preliminary injunction. After hearing oral arguments and considering all of the evidence and memoranda submitted, the district court denied the preliminary injunction, finding that Dr. Koerpel had not established that he had a substantial likelihood of success on the merits. The district court concluded that Dr. Koerpel had been afforded all of the process due him under the circumstances. On appeal, Dr. Koerpel raises the following issues: (1) whether the district court improperly applied the criteria for injunctive relief, and (2) whether the district court misconstrued relevant authority when it concluded that he received all the process that he was due.

## I.

### Subject Matter Jurisdiction

■ As a matter of first importance, this court must determine if its own jurisdiction and that of the district court have been properly invoked. *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *accord, Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). Although the district court's subject matter jurisdiction was challenged by the Government in its response to Dr. Koerpel's motion for a preliminary injunction, the district court found that it had jurisdiction by assuming that Dr. Koerpel had a protected property interest. (R., Vol. 1, pp. 300–301.) The jurisdictional issue was not raised by either party on appeal. Inasmuch as federal courts are courts of limited jurisdiction, the court may and, in fact, has an obligation to inquire into its jurisdiction *sua sponte*. *See generally, Wright and Miller, 5 Federal Practice and Procedure* § 1350, 544–46 (1969).

The jurisdictional issue which presents itself in this case concerns a specific provision of 42 U.S.C. § 1395y(d)(3), which authorizes judicial review of decisions of the Secretary of Health and Human Services if certain requirements are met. That section provides:

> (3) Any person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

42 U.S.C. § 1395y(d)(3).

Section 405(b) details the procedures already enjoyed by Dr. Koerpel, including receipt of a statement of the case, a discussion of the evidence, a statement of the Secretary's determination and the reasons for her decision, reasonable notice of the above and an opportunity for a hearing with respect to the Secretary's decision. Section 405(g) authorizes judicial review after a *final* decision of the Secretary, made

---

1. Dr. Koerpel is entitled to this type of proceeding, but under current law, only after his termi-

nation is effective. 42 C.F.R. § 405.1501, *et seq.*

after a hearing to which the claimant was a party. The accompanying regulation, 42 C.F.R. § 420.107 "Notice of Exclusion or Termination to Affected Party," section (c) states: "This decision and notice [referring to the process Dr. Koerpel has thus far been afforded] constitutes an 'initial determination' and a 'notice of initial determination' for purposes of the administrative appeals procedure specified in Part 405...." *Id.*

At this juncture, no final decision has been issued, and Dr. Koerpel cannot satisfy the requirements of section 405(g). Dr. Koerpel acknowledges that he has not exhausted his administrative remedies. (R., Vol. I, pp. 57–60.) "[T]he requirement that there be a final decision by the Secretary after a hearing was regarded as 'central to the requisite grant of subject-matter jurisdiction....'" *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) quoting *Weinberger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

In *Salfi,* the Court recognized that the "final decision" requirement, i.e., exhaustion of administrative remedies, may be waived by the Secretary. *Salfi, supra* at 764–7, 95 S.Ct. at 2466–67. One year later, the *Mathews* court concluded that the exhaustion requirement could also be excused if three requirements were met: if exhaustion would be futile, irreparable harm resulted, and a colorable constitutional claim which was collateral to the substantive claim of entitlement was raised. *Mathews, supra.*

Courts have liberally construed the *Mathews* test in order to find jurisdiction in spite of a party's failure to satisfy 405(g). *See, e.g., Bowen v. City of New York,* —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (in spite of failure to exhaust, the Court concluded that the claimants should not be required to challenge a secretive policy of the HHS which they did not know existed in order to assert jurisdiction under 405(g).) Without explicit guidance from the Supreme Court, lower courts have struggled to give meaning to the *Mathews*

test with varying results. *See, e.g., Boettcher v. Secretary of Health and Human Services,* 759 F.2d 719 (9th Cir.1985), *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984), *aff'd, Bowen v. New York,* —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), and *Jensen v. Schweiker,* 709 F.2d 1227 (8th Cir.1983).

■ Applying the three-part *Mathews* test here, if the notice of Dr. Koerpel's ineligibility is published with its accompanying statement of reasons by HHS, we have no doubt that Dr. Koerpel's reputation could be irreparably damaged in a way that could not be remedied by subsequent administrative appeals. Administrative exhaustion of the due process claim would be futile because the Secretary has taken a final position with respect to how much process is due at the pre-termination stage. Additional administrative action, which will be concerned with fact finding and the development of a record, will not aid Dr. Koerpel in his efforts to enlarge the process he has been afforded. But like the Second Circuit in *City of New York v. Heckler,* 742 F.2d at 736, we hold that the three factors—futility, irreparable harm and collaterality—must be taken together and evaluated in light of the facts of the case.

Here we find only one aspect of the *Mathews* test troublesome—the colorable collateral constitutional claim. *Mathews* imposed this requirement but the Supreme Court has yet to consider its application in a fashion that would give us definitive guidance. *See, Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (colorable collateral claim requirement discussed but the analysis turned on whether the claim was collateral; the claim was not of a constitutional nature). Some lower courts have held that any sort of collateral claim is sufficient, *City of New York v. Heckler,* (2d Cir.) *supra,* while other courts have held that a constitutional claim is required. *Boettcher, supra.*

Here, however, the question is not over whether Dr. Koerpel has raised a constitutional claim or a claim of some other type.

The *only* claim he has raised is of a constitutional nature. The question is whether Dr. Koerpel's claim is colorable. Our research has disclosed that only one court has attempted to explore what a colorable claim is in this context.

Whether Boettcher's constitutional claim is "colorable" poses a more difficult issue. Courts have not expressly defined what a "colorable" claim is. One court has held that claims were reviewable because they were "not without some merit." Another court has indicated that a putative constitutional claim should be dismissed if it " 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial or frivolous.' "

Determining whether Boettcher's constitutional claim is colorable necessarily involves a review of its merits. A determination that it lacks merit does not necessarily mean, however, that it is so insubstantial and immaterial that it does not pass the "colorable" test. (Citations omitted.)

*Boettcher, supra* at 722.

■ Like the Ninth Circuit, we agree that a review of the merits is necessary to determine whether a claim is colorable. However, we note that such a review does not lead to a conclusive determination on the merits. Our review here is not as it would be following a trial on the merits because of the general presumption of jurisdiction when constitutional claims are involved. *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).

■ Dr. Koerpel's constitutional claim is that the Secretary's finding that he is ineligible for continued reimbursement, denies him due process because of the timing and nature of the proceedings afforded. Dr. Koerpel bears the burden of proving that his claims of infringed liberty and property are colorable; otherwise there can be no claim of inadequate due process. *See, Cervoni v. Secretary of Health, Education and Welfare*, 581 F.2d 1010, 1017–19 (1st Cir.1978) (dismissing a claim for

lack of subject matter jurisdiction for failure to assert a colorable constitutional claim based on the lack of a claimed property interest.) In determining whether Dr. Koerpel has a colorable constitutional claim, we must first look to the underlying interests asserted, i.e., liberty and property, for Dr. Koerpel cannot claim due process if he does not possess these protected interests. *Walker v. United States*, 744 F.2d 67, 68 (10th Cir.1984).

### A. The Property Interest

In his response to the Government's motion to dismiss for lack of jurisdiction, Dr. Koerpel attempted to show the law upon which his "property" interest was grounded. He claimed that "[i]n 1978 Congress enacted 42 U.S.C. § 426–1 whereby all individuals needing dialysis were eligible for Medicare reimbursement, thus creating reimbursement expectations on the part of both consumers and providers of health care." (R., Vol.1, p. 280.) The statute discusses only the entitlement of patients to benefits. It does not mention any entitlement for practitioners like Dr. Koerpel who provide health services. In Dr. Koerpel's own words, his is a "reimbursement expectation."

■ A mere expectation of entitlement is insufficient to create a property right. "[S]uch unilateral hope cannot constitute a protected 'property' interest as to require a pre-termination hearing." *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264–65 (10th Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). Dr. Koerpel has pointed to nothing other than 42 U.S.C. § 426–1, which would give rise to his property interest.

In *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), the Supreme Court held:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a

purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.* Thus, the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them.

*Id.* at 577, 92 S.Ct. at 2709 (citations omitted) (emphasis added).

Following the general principles set out in *Roth,* we have held that "[a] protectable property interest must be an interest secured by statute or legal rule or through a mutually explicit understanding." *Geriatrics, supra,* at 264. Although some Tenth Circuit cases deal with the property interest for other purposes, *Geriatrics* appears to be the only opinion by this court which has dealt with property in a context similar to the case at bar.

In *Geriatrics* we held that the nursing home there had no property interest and commented:

Eventide [the nursing home which was to be suspended from the Medicaid program] is not the intended beneficiary of the Medicaid program. Instead, the purpose underlying the funding program is to extend financial benefits to the patients eligible to receive their medical care at government expense. 42 U.S.C. § 1395a. Eventide argues also that termination of benefits would force the Home to close and that it therefore has a significant financial interest to retain its certification. The Home's financial need for government assisted patients is inci-

dental to the purpose and design of the program. Eventide's operating license has not been rescinded and it may still operate as a nursing home and render care to private-pay patients. The unfortunate reality that it will probably encounter difficulty operating at capacity is not of constitutional significance.

*Id.* at 265.

Like the nursing home in *Geriatrics,* Dr. Koerpel is not the intended beneficiary of the Medicare program or of the statutory provision that he relies upon. His license to practice medicine is not being revoked and although Dr. Koerpel is likely to suffer financial losses, these losses are not controlling. They are not of constitutional significance for the establishment of a protectable property interest. *Geriatrics, supra.*

*Geriatrics* involved a provider agreement between the nursing home and the Government. Despite the existence of the agreement, the court found that it did not create a property interest because of its limited terms and nonrenewability. By analogy, Dr. Koerpel stands to lose income if he is declared ineligible. However, such losses do not advance to the level of a protected property right because no clear promises have been made by the Government. "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands." *Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960) (citation omitted).

■ In summary, the rule derived from Supreme Court cases and cases from this circuit is that a property right must be based on an independent source such as a law, rule, or mutually explicit understanding. *Roth, supra; Leis v. Flynt,* 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979); *Vinyard v. King,* 728 F.2d 428 (10th Cir.1984); *Chavez v. City of Santa Fe Housing Authority,* 606 F.2d 282, 284 (10th Cir.1979); *Coleman v. Darden,* 595 F.2d 533, 537–38 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184

(1979). Dr. Koerpel has not demonstrated any federal laws,[2] rules, or mutually explicit understandings which secure a property interest. If any state scheme exists which could be construed to create a continuing entitlement to Medicare reimbursements, Dr. Koerpel has not brought it to the court's attention.

■ We conclude that Dr. Koerpel has shown no property interest in his continuing eligibility for Medicare reimbursement. His contentions that he has such an interest do not rise to the level of a colorable constitutional claim.

## B. The Liberty Interest

■ Dr. Koerpel has also asserted a liberty interest, in that his good name, reputation, honesty, and integrity are jeopardized because due process was denied him. *Board of Regents v. Roth, supra.* Reputational damage alone, no matter how egregious, is insufficient to support a claim of liberty deprivation. *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981) (citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Some other tangible interest such as employment must also be involved. *Id.* Dr. Koerpel realizes 85% of his income from Medicare reimbursement and if he is found to be ineligible, a major source of his livelihood will be discontinued. Also, his hospital staff privileges may be threatened. Clearly more than his reputation is at risk.

Unlike our analysis of the merits of Dr. Koerpel's claimed property interest, there are no cases in the Tenth Circuit which have explored a protected liberty interest in a context similar to that of the instant case. There are, however, cases which deal with the elements of an infringed liberty interest for 42 U.S.C. § 1983 purposes. *See, e.g., Eames v. City of Logan, Utah,* 762 F.2d 83 (10th Cir.1985) and *Lentsch v. Marshall,* 741 F.2d 301 (10th Cir.1984). These cases explain the existence of a three-prong test—publication of false information which is stigmatizing—which must be satisfied before a liberty interest is implicated. *Bailey v. Kirk,* 777 F.2d 567 (10th Cir.1985) and *Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984).

The first requirement—publication—has not been satisfied here, but it is prevented only by virtue of the stay issued by the district court. Publication in local newspapers can be expected following this decision. Although cases in this circuit unfailingly require publication, e.g., *Rich v. Secretary of the Army,* 735 F.2d 1220, 1227 (10th Cir.1984), the underlying reasons for the requirement do not exist in this case. In most instances, the exact nature of the information disseminated is unknown until publication has occurred; accordingly, the resultant damage cannot be accurately measured. Such is not the case here. The publication, in addition to notifying the public of Dr. Koerpel's future ineligibility, will state the reasons for that determination. By law, this statement of reasons must accompany the notice. The reasons have been explained to Dr. Koerpel in correspondence sent by HHS. There is no question about the publication's content. In addition, *Goss v. Lopez,* 419 U.S. 565, 575 and n. 7, 95 S.Ct. 729, 736 and n. 7, 42 L.Ed.2d 725 (1975), indicates that a future disclosure of information may be enough when a liberty interest is implicated. For jurisdictional purposes, we do not believe

---

**2.** OIG alleges that it cannot reimburse Dr. Koerpel based on 42 U.S.C. § 1395y(d)(1)(C), which provides:

> (1) No payment may be made under this subchapter with respect to any item or services furnished to an individual by a person where the Secretary determines under this subsection that such person—
>
> (C) has furnished services or supplies which are determined by the Secretary on the basis of information acquired by the Secretary in the administration of this subchapter to be substantially in excess of the needs of individuals or to be of a quality which fails to meet professionally recognized standards of health care.

This is a prohibition on the Secretary and while it sets out a standard to which care must conform, it cannot be construed to create an affirmative entitlement. Dr. Koerpel has not argued this, but we would anticipate it.

that it would be proper for Dr. Koerpel to wait until the notice is published because the exact information that the notice will contain is not in doubt.

Given the nature of the information, it is also certain that it would have a stigmatizing effect on Dr. Koerpel and his standing in the community. The truth or falsity of the information will be determined when the agency conducts its post-termination evidentiary hearing. It would be improper for us to require complete fact finding to establish jurisdiction when the appeal itself concerns the alleged inadequacy of fact finding afforded at this juncture. Of course, we note that initial fact finding has been concluded and the OIG has determined that Dr. Koerpel did furnish substandard medical care.

■ While we do not conclude that Dr. Koerpel's liberty interest has been infringed, we do hold that under the unique posture of this case, his allegations of deprivations of liberty are sufficiently colorable to obtain the jurisdiction of the federal court.[3] Holding, as we do, that the district court had jurisdiction to entertain Dr. Koerpel's due process claim, we will now review the merits of the court's denial of his motion for a preliminary injunction.

## II.

In the Tenth Circuit, the following four criteria must be satisfied by a prima facie showing before a preliminary injunction will be granted:

(1)(A) movant must establish that the injunction would not be adverse to the public interest; (2) that the threatened injury to the movant outweighs whatever damage the proposed injunction may

cause the opposing party; (3) that the movant will suffer irreparable injury unless the injunction issues; and (4) that there is a substantial likelihood that the movant will eventually prevail on the merits.

*City of Chanute v. Kansas Gas and Electric Co.*, 754 F.2d 310, 312 (10th Cir.1985), citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1981).

■ Here we will assume, as the district court did, that Dr. Koerpel satisfied three of the preliminary injunction requirements: irreparable harm, the balance of the harm tips in Dr. Koerpel's favor, and the public's interest would not be harmed by the grant of the injunction.[4] In situations where these three criteria have been satisfied, we adopted a modified version of the fourth requirement, the "substantial success on the merits" test:

Where the movant prevails on the other factors, this court has adopted the Second Circuit's liberal definition of the "probability of success" requirement:

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."

*Lundgrin v. Clayton, supra* at 63 (citations omitted). *See also, Kenai Oil and Gas, Inc. v. Department of Interior*, 671

---

3. In light of our conclusion that Dr. Koerpel has satisfied the alternatives to 405(g) exhaustion, we need not decide if 405(h) precludes him from asserting jurisdiction on any other basis. Cf. *Bowen v. Michigan Academy of Family Physicians, et al.*, —— U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

4. In its memorandum decision and order, the district court found "Even if it is assumed that the [three criteria] have been met in this case, ..." without setting out any of the facts these

assumptions were based on. (R.Vol. I, p. 300.) For the benefit of the reviewing court and the parties, and to fulfill the requirements of Fed.R. Civ.P. 52(a) the district court should have elaborated on the facts which formed the basis for its conclusions. *See, Mesa Petroleum Co. v. Cities Services Co.*, 715 F.2d 1425, 1433 (10th Cir. 1983). Such an omission is, however, harmless error because the record supports such findings in Dr. Koerpel's favor.

F.2d 383, 385 (10th Cir.1982) and *Community Communications v. City of Boulder, Colo.*, 660 F.2d 1370, 1375 (10th Cir.1981), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982).

Whenever the first three requirements are met this modified version of the "success on the merits" test must be applied. *Lundgrin, supra.* Although the district court assumed the first three tests had been satisfied and the court was aware of the modified test, it did not evaluate the final requirement in accordance with it. Instead, the district court evaluated the substantial success on the merits requirement literally.[5] The district court denied the injunction on the grounds that Dr. Koerpel had "failed to establish that there is a substantial likelihood that he will eventually prevail on the merits." (R., Vol. I, p. 300).

The appellate court may set aside the grant or denial of a preliminary injunction if it is based on an error of law. *Vance v. State of Utah,* 744 F.2d 750, 752 (10th Cir.1984). However, even though we have determined that an incorrect standard of law was applied, we must decide if the application of incorrect legal criteria amounts to a harmful error. 28 U.S.C. § 2111 and Fed.R.Civ.P. 61. If the error is determined not to affect substantial rights of the parties or if Dr. Koerpel has not demonstrated how the error has prejudiced him, then the district court's findings will be upheld. *Id.* Here neither standard has been met.

The district court concluded that Dr. Koerpel had been afforded all the process due him and therefore he could not demonstrate that he was likely to prevail on the merits. Although we will reach the same result—that Dr. Koerpel received all of the process due him—we will use the appropriate legal standard. As a matter of restatement, the appropriate test in this case is whether the movant has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation. *Lundgrin, supra* at 63. We are mindful that the scope of our review in this matter must be to judge the merits as they would be judged in a preliminary injunction hearing where procedures are less formal than a trial on the merits, where the evidence is subjected to careful scrutiny. *Thournir v. Buchanan,* 710 F.2d 1461, 1464 (10th Cir. 1983).

As mentioned, the correct test is whether the question presented is so serious, substantial, difficult, or doubtful as to be a fair ground for further litigation. Dr. Koerpel contends that he satisfies the "serious and substantial" parts of this test because exclusion from Medicare reimbursement will hamper his ability to associate with various hospitals and clinics and drastically restrict his employment possibilities. We agree that the question of whether Dr. Koerpel was afforded all of the process that he was due will have serious and substantial ramifications because of the nature of the rights involved.

However, Dr. Koerpel has failed to establish that the facts of his case present questions which are difficult and doubtful. A Tenth Circuit case which found that difficult and doubtful questions existed in the preliminary injunction context involved novel First Amendment concerns dealing with the nature and degree of governmental regulation that the First Amendment permits over cable television operators. *Community Communications, supra* at 1376. The questions posed in this case do not rise to the level of uniqueness and uncertainty or abound with untested legal arguments as did the issues in *Community Communications.* Dr. Koerpel's case presents issues of the caliber found in *Kenai Oil and Gas, supra* at 385, where we

---

5. If the other three requirements had not been satisfied and the modified test was not applicable, the Tenth Circuit then interprets the success on merits test as follows: "It is only necessary that plaintiffs establish a reasonable probability of success, and not an 'overwhelming' likelihood of success, in order for a preliminary injunction to issue." *Atchison, Topeka, and Santa Fe Railway Co. v. Lennen,* 640 F.2d 255, 261 (10th Cir.1981).

stated, "[clearly], the issues presented in this case are serious and substantial. However, in our opinion, there is little doubt as to the proper resolution of the legal issues involved...." (*Kenai* involved the expiration of oil and gas leases on Indian lands.)

As far as the legal resolution of the issues presented here, there is no doubt. Even though the district court used an incorrect standard, the court's analysis was accurate. We reach the same result using the appropriate test. Our independent analysis is nearly identical to that of the district court. For that reason we will quote extensively from its decision. The district court stated:

> The plaintiff contends that his constitutional right of due process requires that he is entitled to a pretermination hearing. Dr. Koerpel maintains that he has a constitutionally protected "property" interest as a provider of nephrological care under Medicare as well as a constitutionally protected "property" interest as a provider of nephrological care under Medicare as well as a constitutionally protected "liberty" interest in his good name and reputation as a medical doctor. He also contends that a balancing of the relevant competing interests involved, namely, Dr. Koerpel's reputation, the risk of an erroneous deprivation of that interest through the procedures used, and the government's interest in expeditious removal of unsatisfactory providers and the fiscal and administrative burdens; see *Mathews v. Eldridge*, 424 U.S. at 335 [96 S.Ct. at 903] (1976); *Cases [sic] v. Weinberger*, 523 F.2d 602, 606 (2d Cir.1975), indicates that a pretermination hearing is necessary. For purposes of disposing of this motion, it is assumed that Koerpel has a property interest in his continued participation in Medicare. The court does not need to decide whether a pretermination hearing is required in these circumstances, however, because the procedures followed here satisfy the requirements of due process in any event.

"In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ. v. Loudermill*, [470 U.S. 532] 105 S.Ct. 1487, 1495 [84 L.Ed.2d 494] (1985), *quoting Mathews v. Eldridge*, 424 U.S. at 343 [96 S.Ct. at 907]. In *Loudermill*, the Supreme Court recently considered those procedures that would satisfy the requirements of due process for a pretermination hearing before public employees could be terminated from their jobs. The court stressed that the essential requirements of due process are notice and an opportunity to respond. *Loudermill*, 105 S.Ct. at 1495. The court noted that the pretermination hearing need not be elaborate but should include oral or written notice to the employee of the charges against him, an explanation of the employees' evidence, and an opportunity to present his side of the story. *Id.* Due process requirements are satisfied, the court concluded, when the pretermination hearing provides "an initial check against mistaken decisions" and a post termination administrative hearing and judicial review is available to definitively resolve the merits of the discharge. *Id.*

The Supreme Court's reasoning in *Loudermill* supports the conclusion that Dr. Koerpel has been afforded all the process that is due him before his exclusion goes into effect. This court finds some merit in Dr. Koerpel's claim that the panel's review of the patients' records was incomplete as it did not have all the information necessary to form a competent judgment about the nature of the dialysis care rendered. If the panel's decision had constituted the final basis of Dr. Koerpel's exclusion, a violation of his due process rights might have been implicated. However, Dr. Koerpel was given the medical records that provided the basis for exclusion and was afforded the opportunity to refute the conclusions the panel drew from them. This he did by providing additional information on each patient and by defending his treatment of each patient. The OIG's final decision

noted that it had considered that supplemental information in reaching its final decision. The hearing procedures thus far have afforded Dr. Koerpel with "notice of the case against him and the opportunity to meet it." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 [71 S.Ct. 624, 648–49, 95 L.Ed. 817] (1951). By statute, Dr. Koerpel is entitled to post-termination administrative review which will provide an opportunity for a more extensive and thorough review of the evidence. (R., Vol. I, pp. 301–03.)

 In concluding that Dr. Koerpel received all the process he was due, the district court was entirely correct because only in rare instances has a full pre-termination evidentiary hearing been required. Dr. Koerpel concedes that in only one situation has the Supreme Court granted such extraordinary relief. A trial-type hearing was required where a welfare recipient's benefits were about to be terminated. The Supreme Court held that a welfare recipient lacks independent resources by which to obtain the basic necessities and may be deprived of the means to live while he waits for a post-termination hearing. *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). The Supreme Court has been disinclined to extend this procedure to other proposed deprivations, even where a disabled worked was to have his disability benefits halted. *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). The Court reasoned that other forms of assistance would be available to such a worker and disability assistance is not based on need. Because the Court has been so reluctant to extend the requirement of a full pre-termination evidentiary hearing which approximates a judicial trial, we have no doubt that Dr. Koerpel's legal arguments do not present difficult or doubtful questions.

Under the test announced in *Lundgrin* which requires the movant to show that serious, substantial, difficult, and doubtful issues exist, Dr. Koerpel has failed to establish a prima facie case. Therefore, we affirm the district court's denial of Dr. Koerpel's motion for a preliminary injunction.

AFFIRMED.