Jose R. MARTINEZ, et al., Plaintiffs,

and

James Lannom, et al., Petitioners,

v.

Otis R. BOWEN, Secretary of Health and Human Services, et al., Defendants.

No. 8990–M Civ.

United States District Court, D. New Mexico.

Oct. 14, 1986.

---

Patricia A. Butler, Staff Atty., National Legal Program on Health Problems of the Poor, Los Angeles, Cal., Earl Wylie Potter, Santa Fe Legal Aid Society, Santa Fe, N.M., for plaintiff.

Sutin, Thayer & Browne, Martha J. Kaser, Albuquerque, N.M., for amicus curiae New Mexico Ass'n for Homecare, Inc.

John Vail, New Mexico Legal Services Support Project, Albuquerque, N.M., Ray L. Fuller, Southern New Mexico Legal Services Inc., Las Cruces, N.M., Peter Komlos-Hrobsky, National Senior Citizens Law Center, Los Angeles, Cal., Michael Parks, National Health Law Program, Los Angeles, Cal., for plaintiffs.

William L. Lutz, U.S. Atty., Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M., and Richard K. Willard, Asst. Atty. Gen., Sheila Lieber, David M. Glass, Attys., Dept. of Justice, Washington, D.C., for federal defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on defendants' motion to strike petitioners' motion to enforce the order on remand entered April 23, 1973 (Order) and on defendants' motion to vacate the Order. Counsel have treated the motion to strike more like a motion to dismiss, and so have I. Wright & Miller, *Fed.Pract. & Procedure*, § 1380. Having considered the motions, the responses, the affidavits, the briefs of counsel and the arguments of counsel at the hearing on July 2, 1986, I find that defendants' motions are not well taken and they will be denied.

### I. Facts

Medicare Part A and B beneficiaries began this suit in 1971. 42 U.S.C. § 1395 *et seq.*. Defendant Blue Cross Association of New Mexico had determined that plaintiffs were ineligible for home health care services and, without affording the plaintiffs a pre-termination hearing, had caused health care providers to cease providing services to plaintiffs. *Martinez v. Richardson*, 472 F.2d 1121, 1124–25 (10th Cir.1973). The suit culminated in the Order which enjoined defendants "from terminating home health care benefits in the future to plaintiffs Baca and Aguilar and to all those Medicare beneficiaries similarly situated without first providing an evidentiary hearing on the merits of their terminations." Petitioners seek to reactivate the order.

For purposes of a motion to dismiss, I accept the allegations in the pleadings and at the hearing as true, *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). The current dispute arises from the decision of the present Medicare intermediary, Blue Cross-Blue Shield of New Mexico (Blue Cross) not to reimburse more than one catheter change per month per patient without documented medical need. Until July 1985, Part A Medicare had reimbursed more frequent catheter changes for 20 Chaves County Home Health Services patients. Then, on the advice of the Medical Advisory Committee, Blue Cross began disallowing these claims. As a result of less frequent catheter changes, petitioners Lannom, Garcia, Carpenter and Cox have suffered urinary tract infections, urine retention, great pain, potential kidney damage and renal failure, and leakage. Petitioners lack the financial resources to pay for more frequent changes. Medicare Part A also covered blood tests for petitioner Hogue, an unstable diabetic, until Blue Cross denied coverage. Subsequently, Ms. Hogue qualified for Medicaid reimbursement for her blood tests. The loss of benefits without pre-termination hearings substantially affects petitioners as one explains:

I feel that my life is being threatened by my inability to obtain the care that I need, which is due to the arbitrary action of the Federal Medicare Intermediary. I cannot afford to directly pay a private nurse to come to my home to change my catheter as frequently as needed. I feel abandoned and desperate, and abused by the Medicare system. I have never even had any type of hearing to allow me and

my physician to prove that I need the care that I am being denied now under Medicare.

Affidavit of James Lannom entered March 13, 1986. After losing Medicare benefits, petitioners asked Blue Cross to reconsider the disallowances; as of July 2, 1986, Blue Cross had not issued final orders.

## II. Standing

Defendants challenge petitioners' standing. Standing is a threshold requirement which empowers a federal court to adjudicate a dispute. U.S. Const., art. III, § 2. To establish standing, a plaintiff "must allege personal injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984); *Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.*, 748 F.2d 1421, 1424 (10th Cir.1984). For purposes of a motion to dismiss for want of standing, the material allegations to the complaint must be accepted as true and construed in favor of petitioners. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

■ Defendants assert that petitioner Hogue lacks standing because her injuries are only conjectural since Medicaid paid for her tests after Medicare stopped doing so. *Id.; Allen, supra* 468 U.S. at 751, 104 S.Ct. at 3324–25. To the contrary, I find that Ms. Hogue satisfies the constitutional requirements and prudential limitations for standing. The injury of which Ms. Hogue complains is not loss of daily blood tests; she has suffered the direct personal injury of losing Medicare reimbursement for daily blood tests without a pre-termination hearing. Individuals who qualify for Medicare because of age and the Social Security Taxes they have paid are entitled to payment for necessary medical services. 42 U.S.C. §§ 1395c, 1395d, 1395i. Ms. Hogue's injury can fairly be traced to the challenged action, which is defendants' depriving Ms. Hogue of her property interest in continued receipt of Medicare benefits without due process. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18

(1976); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264 (10th Cir.1981); U.S. Const. amend. V. All defendants caused Ms. Hogue's deprivation since the Secretary sets the procedures for benefit determinations and appeals and Blue Cross acts on behalf of the Secretary. *Martinez, supra* at 1123–4; 42 U.S.C. § 1395h(a). A favorable decision would redress Ms. Hogue's injury: it would afford her a pre-termination hearing, during which time she would retain Medicare benefits. *Oklahoma Hospital Ass'n, supra* at 1424.

■ In addition, Ms. Hogue satisfies the prudential limitations of standing. "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute." *Allen, supra* 468 U.S. at 750–51, 104 S.Ct. at 3324. The standing doctrine embraces judicially self-imposed limits including whether the party is within the zone of protected interests. The question in such cases is "whether the constitutional ... provision on which the claim rests properly can be understood as granting persons in plaintiff's position a right to judicial relief." *Warth, supra*, 422 U.S. at 500, 95 S.Ct. at 2205–06. Ms. Hogue's claim rests on the constitutional guarantee of due process before deprivation of a property interest. Medicare benefits are a protected property interest. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 786–87, 100 S.Ct. 2467, 2475–76, 65 L.Ed.2d 506 (1980); *Geriatrics, Inc., supra* at 264. The availability of alternate means of paying for medical service in no way weakens Ms. Hogue's right to judicial relief for denial of due process for deprivation of a property interest.

■ I concur with defendants that the Gray Panthers Advocacy Committee (Committee) lacks sufficient personal stake in this litigation to have standing. An abstract interest in the government's observing the Constitution is insufficient injury in fact to establish standing. *Valley Forge College v. Americans United*, 454 U.S. 464, 482, 102 S.Ct. 752, 763, 70 L.Ed.2d 700 (1982). Only a personal injury which the Committee suffered *"as a consequence* of

the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees" suffices for standing. *Id.* at 485, 102 S.Ct. at 765. The Committee seeks to "reform and improve various laws and institutions that affect the lives of the elderly." Complaint at ¶ 26; *Schweiker v. Gray Panthers*, 453 U.S. 34, 40, 101 S.Ct. 2633, 2638, 69 L.Ed.2d 460 (1981). The Committee, which consists of approximately 40 individuals who reside throughout the United States, includes two members who reside in New Mexico, one of whose spouse has received home health care. Declaration of Rosanne Bernardy entered June 27, 1986. Since none of the members complain of loss of home health care benefits without pre-termination hearings in New Mexico, the Committee has not suffered sufficient injury in fact to have standing. *Gray Panthers, supra* at 40, n. 8, 101 S.Ct. at 2638, n. 8; *Warth, supra*, 422 U.S. at 511, 95 S.Ct. at 2211; *Sierra Club v. Morton*, 405 U.S. 727, 735–40, 92 S.Ct. 1361, 1366–69, 31 L.Ed.2d 636 (1972).

■ Finally, defendants challenge the standing of all petitioners on grounds that non-parties are not entitled to enforce the Order through a motion for contempt. *U.S. v. American Society of Composers, Authors and Publishers*, 341 F.2d 1003, 1007–08 (2d Cir.1965) (ASCAP). Defendants' argument is not well taken. "When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party." Fed.R.Civ.P. 71; *Dowell v. Bd. of Ed. of Okla. Schools*, 795 F.2d 1516, 1519 (10th Cir.1986). The Order expressly applies to "all those medicare beneficiaries similarly situated" to the original plaintiffs and expressly extends protection to "all persons in the same dire straits as plaintiffs." The instant case is readily distinguishable from *ASCAP* since the *ASCAP* decree did not name petitioner Metromedia and antitrust considerations shaped the court's review. *ASCAP, supra* at 1008. Here the Order clearly intended to benefit petitioners. Like the original plaintiffs, treating physicians had certified petitioners as eligible for Medicare-funded

home health care. *Martinez, supra* at 1124. Petitioners satisfy the remaining requirements for standing: defendants caused petitioners to lose Medicare reimbursement for catheter changes without pretermination hearings, and a favorable decision would entitle petitioners to Medicare payments pending the outcome of the hearings.

### III. Jurisdiction

■ There is continuing jurisdiction to enforce an injunction. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *Hutto v. Finney*, 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978). Where, as here, the injunction proscribes unconstitutional behavior, the court "cannot terminate its jurisdiction until it has eliminated the constitutional violation root and branch." *Battle v. Anderson*, 708 F.2d 1523, 1538 (10th Cir.1983). Continuing jurisdiction "is based on traditional notions of the court's equitable powers." *Id.*

Jurisdiction to enter the order existed under 28 U.S.C. §§ 1331 and 1361. *Martinez, supra* at 1124–25. Defendants assert that *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) eliminates these jurisdictional bases and that jurisdiction no longer exists due to petitioners' failure to exhaust administrative remedies. In *Ringer* claimants sued to get Medicare to pay for a certain surgical procedure. *Id.* at 614, 104 S.Ct. at 2021. Finding lack of jurisdiction because plaintiffs failed to exhaust their remedies pursuant 42 U.S.C. § 405(g), the Court held that "§ 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all claims arising under the Medicare Act." *Id.* at 615, 104 S.Ct. at 2021–22. The Court did not decide whether 42 U.S.C. § 405(h) foreclosed mandamus jurisdiction in all social security cases. *Id.* at 616, 104 S.Ct. at 2022.

The instant case resembles *Ringer* in that petitioners filed claims for the benefits and then brought the action before the Secretary entered a final decision on the claims. 42 U.S.C. § 405(g), which applies

to Medicare Part A pursuant to 42 U.S.C. § 1395ff(b)(1) details petitioners' administrative remedies:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action.... Such action shall be brought in the district court of the United States....

Petitioners have satisfied the non-waivable requirement of § 405(g) that they file a claim for benefits, but they have not satisfied the waivable requirement that they fully pursue administrative remedies prescribed by the Secretary. *Ringer, supra* at 617, 104 S.Ct. at 2023.

▪ The resemblance between the instant case and *Ringer* ends here. *Ringer* is not controlling. The exhaustion of administrative remedies requirement can be excused "if exhaustion would be futile, irreparable harm resulted, and a colorable constitutional claim which was collateral to the substantive claim of entitlement was raised." *Koerpel v. Heckler,* 797 F.2d 858, at 862 (10th Cir.1986) (citing *Mathews, supra,* 424 U.S. at 328, 96 S.Ct. at 899). Where due process is implicated, the Tenth Circuit is quick to find jurisdiction without exhaustion of administrative remedies:

> [There is] no significant interest to be served by requiring [plaintiff] to exhaust administrative remedies. The agency's expertise would not aid the court in ruling on the matter of constitutional law involving the due process claim; a detailed record involving the factual background from which this controversy arose would not aid the courts in ruling on the constitutionality of these procedures inasmuch as the issue is one of law. If [plaintiff] should be required to exhaust the procedures provided under the Act and prevail, his constitutional due process challenge would be lost.

*McGrath v. Weinberger,* 541 F.2d 249, 252–53 (10th Cir.1976). The same reasoning applies in petitioners' case. In addition, I stress the irreparability of denying needed medical attention to frail elderly without private resources. An erroneous termination damages them "in a way not recompensable through retroactive payments." *Mathews, supra,* 424 U.S. at 331, 96 S.Ct. at 900–01. In contrast, the Court in *Ringer* did not excuse the exhaustion requirement because the suit for payment for a surgical procedure was not collateral to the claim for benefits under the Act and the Secretary was peculiarly competent to decide the claim. *Ringer, supra,* 466 U.S. at 618–19, 104 S.Ct. at 2023–24. The Tenth Circuit recently reiterated a willingness to "liberally construe the *Mathews* test in order to find jurisdiction in spite of a party's failure to satisfy § 405(g)." *Koerpel, supra,* at 862 (citing *Bowen v. City of New York,* —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)).

▪ Mandamus, 28 U.S.C. § 1361, affords an alternative jurisdictional basis.

> We are persuaded by the distinction ... other courts have drawn between suits seeking to establish a right to benefits and suits requesting that [the governmental agency] provide a procedure through which the right to benefits can be contested. Here, [plaintiff] has never claimed that she was entitled to the benefits erroneously credited to her bank account; she contends only that she had statutory and constitutional rights to notice and a hearing before the benefits were removed from her account. Accordingly ... we hold that the district court had mandamus jurisdiction to hear this case.

*Dockstader v. Miller,* 719 F.2d 327, 329–30 (10th Cir.1983). In *Ringer,* the court left open the availability of mandamus jurisdiction but favorably cited the following rationale. *Ringer, supra,* 466 U.S. at 616, 104 S.Ct. at 2022;

> Indeed, ... [Congress] would have been quite justified in thinking that mandamus jurisdiction posed no threat to the system of judicial review contained in §§ 405(g) and (h). Traditionally, a writ of mandamus will not issue unless the plaintiff has exhausted administrative remedies and unless the defendant owes the plaintiff a clear duty to act. But the

typical issues Congress intended to be resolved [pursuant to § 405] ... were close factual questions committed by necessity to the Secretary's judgment.... A minimum of interference would thus be expected ·from the co-existence of mandamus, since these essentially factual disputes are not amenable to the mandamus remedy. Conversely, it would strain belief to think that Congress meant to require a plaintiff to forego mandamus and resort to prolonged § 405 procedures where a clear duty in the defendant ... had been demonstrated.

*Ellis v. Blum*, 643 F.2d 68, 81 (2d Cir.1981). Petitioners satisfy the ·requirements for mandamus jurisdiction. Section 405(g) does not adequately remedy their due process claim and the Secretary owes them a duty to act constitutionally.

### IV. Relief From Judgment

Defendants request vacation of the judgment to the extent the judgment requires pre-disallowance hearings before denial of specific Medicare claims. Fed.R.Civ.P. 60(b)(5). After recognizing that injunctions must be obeyed until overturned, *W.R. Grace & Co., supra*, 461 U.S. at 766, 103 S.Ct. at 2183; *Dowell, supra* at 1521, defendants press for vacation in view of a substantial change in the law. *System Federation v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *Dowell, supra* at 1521. Specifically, defendants argue that *Mathews, supra* undercuts the Order. The Order relied on *Goldberg v. Kelly*, 397 ·U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) to find plaintiffs entitled to "a pre-termination evidentiary hearing in order to be afforded due process." Order at 2. The Court in *Mathews* held that "an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comport with due process." 424 U.S. at 349, 96 S.Ct. at 909–10. The Court so concluded after considering the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

Applying these factors· to the instant case, defendants argue for vacation of the Order. Defendants liken petitioners' private interest to that of the recipient of disability benefits in *Mathews* since "eligibility ... is not based on need" and other financial resources, including government assistance, are available. *Id.* at 340, 342, 96 S.Ct. at 906; 42 U.S.C. § 1395c. Because decisions about eligibility for Medicare benefits turn on "routine, standard and unbiased medical reports" and do not involve "questionable credibility and veracity", there is little risk of erroneous deprivation. *Mathews, supra* at 344, 96 S.Ct. at 907. Finally, defendants assert that the Medicare system would face a substantial burden if Blue Cross were required to conduct pre-denial hearings before disallowing any claim. Affidavit of Elisa J. Hamill entered July 16, 1986.

█ I disagree. Modification of an injunction is only appropriate when "the changes are so important that dangers, once substantial, have become attenuated to a shadow," *SEC v. Jan-Dal Oil & Gas, Inc.*, 433. F.2d 304, 305 (10th Cir.1970) and the order has become "an instrument of wrong". *Wright, supra*, 364 U.S. at 647, .81 S.Ct. at 371. Such a reluctance to modify injunctions maintains a balance between the policy of *res judicata* and the right of the court to shape relief to changed circumstances. *Id.* at 647–48, 81 S.Ct. at 371–72. *Mathews* did not change the law. In fact, in *Mathews* the Court explicitly acknowledged the continuing viability of *Goldberg*. *Mathews, supra*, 424 U.S. at 334–35, 96 S.Ct. at 902–03.

In addition, under the *Mathews* factors, petitioners are entitled to pre-termination hearings. Petitioners' private interest in continued receipt of benefits more closely approximates that of welfare recipients

than that of disability recipients in that Medicare recipients may be deprived of "the very means by which to live" during the course of post-termination hearings. *Id.* at 340, 96 S.Ct. at 905 (quoting *Goldberg, supra,* 397 U.S. at 264, 90 S.Ct. at 1018).

Nor can we ignore in any evaluation of the "interest at stake" the significant percentage of Medicare claimants disadvantaged by disability, illness and poverty, a substantially higher figure than is true of the population at large. Indeed it was because of the special coincidence of medical needs and financial problems among elderly people that the Medicare program was established in the first place. That unfortunate coincidence is borne out by current statistics which indicate that the elderly still have lower incomes and higher medical expenses than other segments of the population. Thus, though need is not an eligibility criteria for participation in Medicare, a disproportionately large percentage of elderly recipients hover near the poverty level. Nonreimbursed medical bills of up to $100 represent a substantial loss to them.

*Gray Panthers v. Schweiker,* 652 F.2d 146, 166 (D.C.Cir.1981) (citations omitted).

■ Whereas elaborate procedures reduce the risk of erroneous termination of disability benefits, *Mathews, supra,* 424 U.S. at 343–46, 96 S.Ct. at 906–08, such is not the case for Medicare benefits. Here the Medical Advisory Committee, on the basis of Medicare coverage guidelines, representative claims, nurses' notes and physicians orders for selected patients and letters from two doctors, "concluded that standard practice for routine catheter change should be every one or two months." Medical Advisory Committee Minutes for June 26, 1985 (attachment to Declaration of Virginia Thannisch filed April 28, 1986). Subsequently, Blue Cross denied nursing visits "[w]here documentation in the medical record did not support the need for frequent changes of the catheter." Declaration of Thannish, *supra.* The resulting urinary tract infections, pain and possible kidney damage and renal failure which pe-

titioners allege they have suffered, reveal that reliance on routine medical reports and generally applicable standards does not sufficiently protect individuals from erroneous deprivation of benefits.

Finally, I cannot accurately assess the the burden on the government, of pre-termination notice and hearing. Defendants' estimated costs of $6,915,600 Affidavit of Hamill, *supra* fails to recognize that home health care represents only approximately 3.7% of all Medicare expenditures and that only approximately .06% of denied claims are appealed. Petitioners' response brief filed July 29, 1986 at 5, 6.

### V. Violation of the Order

Defendants argue that they have not violated the Order because Blue Cross only denied petitioners certain Medicare benefits and did not disqualify them from receiving all future home health care services. Defendants assert that the Order's language enjoining defendants "from terminating home health care benefits in the future ... without first providing an evidentiary hearing" only requires hearings before final cancellation of all future benefits. *Acme Mills v. Tanner-Brice Co.,* 112 F.2d 910, 911 (5th Cir.1940). Alternatively, defendants find the Order too vague to support a contempt finding. *Williams v. Iberville Parish School Board,* 273 F.Supp. 542, 545 (E.D.La.1967).

■ I disagree. The language of the order has clear constitutional and statutory meaning. At issue in *Goldberg* and *Mathews* was whether due process required an evidentiary hearing prior to termination of benefits. In these cases, "termination" refers to discontinuation or suspension of financial aid and recipients' ceasing to receive benefits. *Goldberg, supra,* 397 U.S. at 257, 90 S.Ct. at 1014; *Mathews, supra,* 424 U.S. at 324, 96 S.Ct. at 897. In *Goldberg* and *Mathews,* "termination of benefits" refers to losing program coverage. Not so here. The nature of the Medicare program and the language of the Medicare Act dictate a different interpretation of "termination of benefits". Under welfare and social security disability, recip-

**104**

ients' program eligibility changes as their circumstances change. 42 U.S.C. § 602, § 1382. Under Medicare, anyone who is age 65 or over, or who has received social security disability benefits for over 25 months or who meets certain other limited criteria is eligible. *Id.* at § 1395c. One's Medicare program eligibility does not change with the circumstances but the benefits received do. 42 U.S.C. §§ 1395d, 1395f and 1395y. The Medicare Act refers to various services provided as "benefits". *Id.* at § 1395d. The Act specifically lists home health services as one of its "benefits", and regulations list a number of items and services as part of home health. *Id.* at § 1395d(a)(3); 42 C.F.R. § 409.40. The Order is broad and clear. Defendants violated the Order when they discontinued certain home health care service to petitioners without a hearing.

### VI. Relief

In their motion, petitioners request an order for defendants to show cause why they should not be held in contempt, and after a contempt hearing, an order for the Secretary to submit an implementation plan. Judging a party in contempt or ordering a specific act to be done are available remedies. Fed.R.Civ.P. 70. Now, Therefore,

IT IS ORDERED that defendants' motions to strike petitioners' motion to enforce the Order and their motion to vacate the Order shall be, and hereby are, denied.

IT IS FURTHER ORDERED that an order directed to defendants to show cause why they should not be held in contempt shall be issued unless within 20 days of entry of this opinion defendants notify me that they shall submit a plan to implement the Order within 60 days thereafter.