517 P.2d 549

Lyle MANNING, for himself and in behalf of
all others similarly situated, Plain-
tiff and Appellant,

v.

SEVIER COUNTY, Utah, et al.,
Defendants and Respondents.

No. 13444.

Supreme Court of Utah.

Dec. 21, 1973.

H. R. Waldo, Jr., and Ronald J. Ockey, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for plaintiff-appellant.

K. L. McIff, Ken Chamberlain, of Olsen & Chamberlain, Richfield, Richard R. Boyle, of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for defendants-respondents.

TUCKETT, Justice:

This is an action for declaratory judgment and injunctive relief regarding the validity of the authorization and issuance of County and City bonds for the purpose of constructing a hospital at Richfield, Utah.

A resolution was adopted by Sevier County on February 14, 1972, which called a special bond election to be held in the County for the purpose of authorizing issuance of bonds by the County. The proposition was contained in a notice of election, and the form of ballot provided as follows:

Shall General Obligation Bonds of Sevier County, Utah, in the aggregate principal amount of Three Hundred Thirty-Five Thousand Dollars ($335,-000), bearing interest at a rate or rates not to exceed seven percent (7%) per annum, and due and payable in not to exceed twenty (20) years from the date of said bonds, be issued and sold for the purpose of defraying all or a part of the cost of acquiring land and constructing a County Hospital, the same to be operated by The Church of Jesus Christ of Latter-day Saints or by a corporation or entity controlled by it, for the purposes of providing hospital care to the residents of the County and others

regardless of race, creed, color or religious affiliation?

By an election held on March 14, 1972, a majority of electors of Sevier County approved the issuance of said bonds. A similar resolution was adopted by the City Council of Richfield, Utah, and pursuant thereto a special bond election was held at which a majority of the qualified electors voted in favor of issuing general obligation bonds of the City in the sum of $100,000, to assist in defraying the cost of acquiring a site and constructing a new hospital. The planned hospital referred to herein as the New Hospital will be owned by the City and County as tenants in common. Health Services Corporation of The Church of Jesus Christ of Latter-Day Saints will contribute one third of the total cost of acquisition and construction of the hospital. Health Services Corporation is a Utah nonprofit corporation owned and controlled by the Church.

Pursuant to an agreement between the County and City as lessors and Health Services Corporation as lessee the latter will undertake to manage and operate the facility. The pertinent parts of the lease are in substance as follows:

(a) The New Hospital will be leased by Health Services at a rental of $1.00 per year for a primary term of 25 years, with automatic renewals for three succeeding 25-year periods.

(b) At the end of the primary lease term the Lessors may, at their option and with the written consent of Health Services, transfer all of their right, title and interest in the New Hospital, including the real property and all improvements thereto, to Health Services and, in such event, Health Services is not obligated to make any payment to the Lessors or reimbursement of any part of the funds contributed by the County or City for the acquisition of land and construction and equipping of the New Hospital.

(c) Health Services will be responsible for the acquisition and maintenance of all licenses required for the New Hospital and for the ordinary expenses of maintaining the premises, except that Lessors will be liable for necessary repairs in the structural members of the building and all Class I and Class II equipment.

\* \* \* \* \* \*

(e) Health Services will have sole and exclusive use and control of the leased premises and of the operation of the Hospital and will have sole and exclusive right to designate members of the governing board of the New Hospital, save and except for one member who shall be designated by the Board of County Commissioners.

(f) Health Services will have the right to retain all profits derived from

and will bear any losses resulting from the operation of the New Hospital.

\*     \*     \*     \*     \*     \*

In addition to the above, there are provisions that the quality or availability of care shall in no way relate to race, creed or color, the same quality of care being available to everyone without distinction or discrimination; that the physicians, employees, nurses and other technicians shall not be limited to persons who are members of the Latter-Day Saints faith; that there will be no chapels or other religious rooms set aside at the hospital and there will be no religious symbols or plaques contained therein; that the name of the hospital shall not contain a reference to any religious denomination; that no proselyting by any religious sect or distribution of literature, books, brochures, symbols, or other activities relating to or being of a proselyting nature shall be in said hospital.

After a trial was had in the district court, that court found the issues against the plaintiff and in favor of the defendants and concluded that the general obligation bonds to be issued pursuant to the proposition submitted to the electorate were lawful, that the ownership and operation of the hospital was a public function and that the lease of the contemplated hospital to a private corporation controlled by a church is not a violation of any State or Federal statutory or constitutional provision, and that the specific lease entered into between the County and City as lessors and the Health Services does not violate any State or Federal statutory or constitutional provisions. From the judgment entered in favor of the defendants plaintiff has brought the case here on appeal. The plaintiff seeks a reversal with directions to the district court to enter a judgment declaring the authorization and issuance of City and County bonds unconstitutional and void.

The plaintiff's first point on appeal is that the construction, lease and operation of the New Hospital violates the First Amendment of the United States Constitution the pertinent part of which is as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . .

This provision is made applicable to State action by the Fourteenth Amendment. The United States Supreme Court has formulated a test to be applied in determining whether a statute or a proposed State Action does not violate the establishment clause above set out. That rule may be stated as follows: First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and finally, the statute must not foster "an excessive government entanglement with

religion." [1]  It would appear to us that the plan adopted by the public bodies in the establishment and operation of a hospital meets that test.

The plaintiff's point two urges that the proposed establishment and operation of the hospital are prohibited by Article I, Section 4, of the Utah State Constitution, which provides as follows:

> The rights of conscience shall never be infringed.  The State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; no religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof. There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions.  No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment.  No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution.

The plan adopted by the City and County to establish a hospital and to provide medical care for the inhabitants of the area carefully avoided excessive religious entanglements.  We are of the opinion that the plan does not violate the proscriptions of the Utah Constitution.[2]

■  Having dealt generally with the validity of the plan whereby Health Services undertakes to operate the New Hospital for the County and City, we now direct our attention to one provision of the lease agreement which provides in part as follows:

> 12.  The foregoing automatic lease renewals notwithstanding, Lessor at the end of the initial lease term of 25 years, and upon a determination that it is in the best interest of its citizenry, may in consideration of Lessee's having provided health care to the citizens of Lessor, and with the written consent of Lessee, transfer all of Lessor's right, title and interest in the hospital facility, including the real property and all improvements thereto, to Lessee, the latter at once becoming the sole owner thereof.

A gift by the County and the City of the hospital which was constructed and established by the use of public tax moneys

---

1. Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060; Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L. Ed.2d 745; Hunt v. McNair, 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923.

2. Thomas v. Daughters of Utah Pioneers, 114 Utah 108, 197 P.2d 477.

would be plainly unconstitutional and in violation of the establishment clauses of both the Federal and State Constitutions.[3]

■ We have considered the other points raised by the plaintiff but do not deem it necessary to discuss each one in detail except to comment on his contention that the City and County have failed to comply with the provisions of Sections 10–8–92 and 17–5–45. It would seem that these provisions were only intended by the legislature to apply to political subdivisions who are engaged in the joint administration, operation and maintenance of a joint hospital. The plan we are here considering does not contemplate the actual administration of the hospital by the City and County.

We are of the opinion that the provisions of the lease providing for its termination by either party are sufficient to insure compliance with the provisions of the lease and especially those dealing with church entanglements. The lease provides that one representative of the County shall be a member of the hospital board and that general oversight should be sufficient to protect the interests of the City and County and the public generally.

The judgment of the court below is affirmed except as to provisions of Section 12 of the lease above mentioned, and the matter is remanded with directions for the district court to amend its finding and judgment in that respect, and the other provisions of the judgment are affirmed. No costs awarded.

CALLISTER, C. J., and HENRIOD, J., concur.

CROCKETT, Justice: (concurring, but adding comments).

I am in agreement with the court's decision, but I desire to record these separate comments pertaining thereto.

It seems to me that this case should be decided upon the Constitution and laws of the state of Utah. It is to be noted that the provision of Section 4, Article I, of the Utah Constitution, which our decision quotes, is more articulate and express in assuring religious liberty and prohibiting discrimination, or church interference with private or public rights, than the generality of the First Amendment of the U. S. Constitution.

■ More important than the foregoing, I am *not* in accord with the idea that the First Amendment is made applicable to State action by the Fourteenth Amend-

---

3. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Tilton v. Richardson, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790.

ment. It is true that the United States Supreme Court has made this statement with respect to various of the rights assured by the first ten amendments (Bill of Rights) as part of the system of liberties which should be assured in the free society. That is fine sounding language indeed. But as applied to problems such as the instant one, it is but a specious pretext which has been used for defeating the clearly declared intent of those amendments, and for the federal judiciary arrogating to itself powers which were never intended by the founding fathers.

It should be remembered that those amendments were all adopted and approved in one package; and that because of fears of an overpowerful federal government, (now proved so well justified) they included these precautionary provisions:

Amendment IX: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Amendment X: The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

The impropriety of this process which is continuously going on, of divesting the States of their prerogatives and responsibilities, is seen in sharper focus when it is reflected that the language of the First Amendment itself is but an interdiction against "Congress," i. e., that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof"; and in realizing how far beyond any intent, express or implied, of the framers it has been distorted and proliferated. The desirability of maintaining a balance between the sovereignties of the states and the federal government as one of the essential balances in our American system of government was pointed out by Chief Justice Evans Hughes in an address to the joint session of Congress in the Sesqui-Centennial Commemoration, 4th day of March, 1939.[1]

Turning to another matter: It is perhaps not amiss for the opinion to point out that if the lessor (County and City) elects to transfer the hospital to the lessee (Health Services) it *might* be an unconstitutional transaction. However, it is also to be noted that this could not happen until after 25 years; and that even then, whether such a transfer would be unconstitutional may well depend upon circumstances which then exist, and what arrangements would be agreed upon by the parties. But there is no present issue as to the constitutionality of such a future transaction. We need not

1. Reported in: Formation of The Union Under The Constitution, edited by Sol Bloom, pp. 675–6.

and should not anticipate unconstitutional conduct, but the contrary.

ELLETT, J., concurs in the views expressed in the concurring opinion of CROCKETT, J.

HENRIOD, J., concurs in the views expressed in the concurring opinion of CROCKETT, J., except for the last paragraph.