Kecia I. ALBRIGHT, a resident of Salt Lake County, State of Utah; A.K., a minor by and through next friend M.K., a resident of Salt Lake County, State of Utah; H.B., a minor by and through next friend M.B., a resident of Utah County, State of Utah; T.C., a minor by and through next friend M.C., a resident of Utah County, State of Utah; Nancy W. Moore, a resident of Utah County, State of Utah; and Adrienne Morris, a resident of Utah County, State of Utah, Plaintiffs,

v.

BOARD OF EDUCATION OF GRANITE SCHOOL DISTRICT, a body corporate of the State of Utah; Loren G. Burton, Superintendent of the Granite School District; Louie J. Long, Principal of Granite High School; Ron Hermanson, Principal of Eisenhower Junior High School; Board of Education of Alpine School District, a body corporate of the State of Utah; Steven C. Baugh, Superintendent of the Alpine School District; Russell R. Felt, Principal of Lehi High School; and John H. Childs, Principal of Orem High School, Defendants.

Civ. No. 90–C–639G.

United States District Court,
D. Utah, C.D.

May 15, 1991.

Michael Patrick O'Brien, Diane Abegglen, Salt Lake City, Utah, for plaintiffs.

Brinton R. Burbidge, John Robson, Merrill Nelson, Salt Lake City, Utah, for defendants.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

J. THOMAS GREENE, District Judge.

This case is before the court on the motion of plaintiffs for preliminary injunction. At a prior hearing this court stayed all further proceedings except the pending motion because the Supreme Court has granted certiorari in a similar case which arose in the State of Rhode Island, and its ruling in that case plainly will impact this proceeding. *Lee v. Weisman,* — U.S. —, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). The questions in the Petition for Certiorari were framed as follows:

1. Do school authorities violate the Establishment Clause by allowing a speaker at a public junior high or high school grad-

uation ceremony to offer an invocation and a benediction that acknowledge a deity?

2. Whether direct or indirect government coercion is a necessary element of an establishment clause violation? [1]

■ These are issues which the Tenth Circuit Court of Appeals has never had occasion to rule upon, and the Supreme Court has not yet considered the constitutionality of religious invocations and benedictions at public high school graduation ceremonies. The definitive answer to those questions will come from the Supreme Court and not this court. Of course, this court will follow and abide by whatever rulings are rendered which have application here. In the meantime, we are confronted with the immediate and practical problem whether to permit or to ban the offering of invocations and benedictions at the presently scheduled public high school graduation ceremonies in the defendant school districts. The Granite School District plaintiffs and defendants have reached an accommodation concerning the issues presented in the pending motion for prelim-

inary injunction as to graduation prayer for the school year 1991,[2] but the issues are sharply drawn as to the Alpine School District defendants.

The Alpine School District has permitted prayer at high school graduation ceremonies for nearly 80 years. The policy of the District is to permit prayer on a voluntary, non discriminatory basis, at the request of the graduating class, with "participating students selected on the basis of scholastic achievement, without regard to religious affiliation, preference or belief. (Such students) are counseled only to speak in non sectarian, non doctrinal and non proselytizing terms so as to represent and respect diverse views." [3] The principal at Orem High School describes the typical format for the graduation ceremony, and points out that school officials do not attempt to "control, regulate or preapprove the content of speech or expression by any participant," and that students pronouncing the invocation and benediction are counselled to abide by the District policy.[4]

---

1. Petition for Writ of Certiorari to the United States Court of Appeals for the First Circuit, No. 90-1014, p. 1.

2. On the day before the hearing on motion for preliminary injunction, defendant Granite School District and related defendants stipulated with plaintiffs who assert claims against the Granite defendants that the pending motion be withdrawn as against them. The Stipulation provides:

 Pursuant to the decision of involved students, prayers will not be recited at the 1991 graduation ceremonies of Granite High School or Olympus High School in the Granite School District.

 \*　\*　\*　\*　\*　\*

 At its 1991 graduation ceremony, Olympus High School will have a moment of silence introduced by the words: "At this time let us take a moment of silence to be used as you personally feel appropriate. You may wish to reflect on your high school experience, or use this time to consider the freedoms granted to us by this country and its constitution."

 \*　\*　\*　\*　\*　\*

 The Granite defendants represent and affirm that they will do nothing nor knowingly allow the students to do anything that would modify the decisions mentioned above to allow the

 recitation of prayer at the 1991 Granite or Olympus High School graduation ceremonies.

 \*　\*　\*　\*　\*　\*

 This stipulation does not constitute an agreement, admission or stipulation by any of the parties regarding the constitutionality of the challenged practices or the practices to be used during the 1991 graduation ceremonies. All stipulations by parties in litigation are subject to approval by the court. This court has approved the stipulation as constituting an option available to the said parties which have chosen. In the Order of approval this court said:
 School officials are directed not to encourage or require but also not to discourage or interfere with the students' rights to engage in voluntary and private prayer during any appropriate moment of silence. *Wallace v. Jaffree*, 472 U.S. 38, 59 [105 S.Ct. 2479, 2491, 86 L.Ed.2d 29] (1985).
 Order, May 15, 1991, Case No. 90–C–639G.

3. Affidavit of Superintendent Steven C. Baugh, pp. 3, 4.

4. Affidavit of Principal John H. Child, p. 4. The graduation ceremony is described as follows:
 The program traditionally includes a processional, the Pledge of Allegiance led by a class officer, invocation by a class member, welcome by the student body president, welcome address by senior class president, four student addresses, two sets of student musical num-

As a preliminary matter, it should be recognized what is before the court and what is not before the court. At this point, we are not called upon to address prayer in the classrooms, at pep rallys, in the lockerrooms or in any context except in connection with graduation ceremonies. Neither are we confronted with any other challenged practice or alleged religious entanglement. We are not here called upon to approve or disapprove any past practice or form of prayer. We are concerned only with possible future invocations and benedictions at graduation ceremonies. That is the narrow matter we here address.

## ANALYSIS

### Standing

██ To be properly before this court, plaintiffs must demonstrate that they have standing to raise these questions. In this regard, plaintiffs' Motion to Amend the complaint in order to add additional parties was granted. This court holds that at least some of the Alpine plaintiffs have shown a "personal stake" or injury sufficient to satisfy standing requirements.[5]

### Requirements for Preliminary Injunction

██ The matter is before this court in the framework of a Motion for Preliminary Injunction, rather than a final ruling of law on the merits. The primary purpose of a preliminary injunction is "to preserve the status quo pending a final determination of the parties' rights." *Otero Savings and Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 277 (10th Cir.1981). In this case, the status quo would be to permit continuation of a long standing once a year practice at a ceremonial occasion. Accordingly, movants must make a "clear showing" to

bers (including "Battle Hymn of the Republic"), tribute to parents by a class officer, recognition of class project by a class officer, remarks and recommendations by the principal, remarks from a member of the school board, presentation of "diplomas" (cover only), presentation of the class by a class officer, a benediction by a class member, and a recessional. The graduates have substantial input in the program. There is no requirement that an invocation or benediction be included in the program. The entire program typically lasts approximately two hours. The total time consumed by the invocation and benediction is typically one to two minutes. The ceremonies are conducted at district expense; however, no additional expense is attributable to the invocation or benediction. *Id.*, p. 3.

5. In *Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir.1989) the Tenth Circuit held that a resident of St. George, Utah who was offended by "pervasive contact" with a city logo depicting among other scenes an L.D.S. Temple, demonstrated sufficient personal injury to support his standing to assert alleged constitutional violation. But see, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (Held, plaintiffs had no standing because personal injury suffered as a consequence of alleged constitutional violation was not shown. Plaintiffs had no "personal stake" other than "psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* at 485, 102 S.Ct. at 765). *Accord, City and County of Denver v. Matsch*, 635 F.2d 804 (10th Cir.1980) (Citizens

and taxpayers who sued to enjoin inclusion of a nativity scene on government property were held not to have sufficient "personal stake").

In the case at bar, eight of the Alpine plaintiffs allege constitutional violations by the Alpine School District and related defendants. Although some of the student plaintiffs have either already graduated or will not graduate this year, all of the plaintiffs desire to attend the graduation ceremonies and would be offended by prayer in that setting. A Guidance Counselor at Orem High School who has good reason to want to attend graduation even if it is not required would be "personally offended ... because my experience has proven that the prayers consistently used at graduation ceremonies are LDS prayers.... I am also concerned about the students who desire to attend their graduation ceremonies who belong to minority religions or are non believers and are made to feel left out at a time when they should feel very much a part of the class." Affidavit of Nancy W. Moore, pp. 4 and 5. An Advance Placement English teacher avers that she would be "personally offended if prayer were offered" for constitutional reasons. Affidavit of Adrienne Morris, page 3. Graduating seniors who desire to attend would be "offended at the prospect of public prayer at a graduation ceremony ... (because) such excludes those who do not share the religious views expressed in the prayer" (Affidavit of Jeannie Ingram, pp. 2, 3), and "feel that the use of prayer at graduation is inappropriate because it is unfair to all the people. It makes people who are not of that faith or do not pray publicly feel uncomfortable." Affidavit of Jennifer Blakelock, p. 2.

change the status quo. *See Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985).

■ In order to obtain preliminary injunctive relief, plaintiffs must demonstrate that:

(1) there is a substantial likelihood they will prevail on the merits;

(2) they will suffer irreparable injury unless the injunction issues;

(3) the threatened injury to them outweighs any damage to defendants; and

(4) the injunction will not be adverse to the public interest.

*Seneca–Cayuga Tribe v. State ex rel Thompson,* 874 F.2d 709, 716 (10th Cir. 1989); *Koerpel v. Heckler,* 797 F.2d 858, 866 (10th Cir.1986); *City of Chanute v. Kansas Gas & Electric Co.,* 754 F.2d 310, 312 (10th Cir.1985); *Kenai Oil & Gas, Inc. v. Department of Interior,* 671 F.2d 383, 385 (10th Cir.1982); *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). If the last three conditions are met, the Tenth Circuit applies a less stringent standard for determination of "substantial likelihood of success," i.e., "plaintiffs need only show a fair ground for litigation." [6] However, in order for this lesser standard to apply, plaintiffs must demonstrate greater relative injury to themselves, and show that "the balance of hardships tips decidedly" in their favor.[7] The traditional standard requires a showing of a "reasonable probability of success." [8]

■ In reviewing the four requirements for preliminary injunction, the court finds that the last three factors have been established by the plaintiffs. However, "the balance of hardships" have not been shown to "tip decidedly" toward plaintiffs. The balance between the threatened injury to plaintiffs by being exposed to public prayer which is offensive to them and the damage to defendants in being deprived of such public ceremonial prayer, is a close question. The high school graduation occasion is unique because it is the only time there will be such an occasion. As concerns senior students, who are plaintiffs herein, counsel for plaintiffs submit on the basis of affidavits that "they must choose between attending graduation and putting up with prayers they believe are offensive and unconstitutional or not attending their own (and only) high school graduation ceremony." Plaintiffs' Amended Memorandum in Support of Motion for Preliminary Injunction, p. 6. However, the same can be said in reverse as to graduating seniors who want such prayer. It really does not answer the relative injury suffered by them to say that they are permitted privately and silently to pray at any time, even during the ceremony.[9] The *balance of threatened injury* as between the students who do not want prayer and those that do, and between plaintiffs and defendants in this regard, does not "decidedly tip" in favor of plaintiffs. Neither does the extent of irreparable injury or adverse impact on the public interest "decidedly tip" in favor of plaintiffs.

■ Vindication of constitutional freedoms and protection of First Amendment

---

**6.** *Seneca–Cayuga Tribe v. State of Oklahoma,* 874 F.2d at 716. *See also Koerpel v. Heckler,* 797 F.2d 858, 866–67 (10th Cir.1986); *Kenai Oil & Gas, Inc. v. Dept. of Interior,* 671 F.2d 383, 385 (10th Cir.1982); *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1983).

**7.** *Lundgrin v. Claytor,* 619 F.2d at 63. *See also Triebwasser & Katz v. American Telephone & Tel. Co.,* 535 F.2d 1356, 1359 (2d Cir.1976).

**8.** In *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen,* 640 F.2d 255, 261 (10th Cir.1981), the court said:

It is only necessary that plaintiffs establish a reasonable probability of success, and not an "overwhelming" likelihood of success, in order for a preliminary injunction to issue. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). Preserving the status quo is quite different from finally determining the cause itself.

**9.** In *Wallace v. Jaffree,* 472 U.S. 38, 59, 105 S.Ct. 2479, 2491, 86 L.Ed.2d 29 (1985), the Supreme Court struck down under *Lemon* a Texas law in which the unrebutted legislative intent for providing a moment of silence was "to return voluntary prayer to public schools." The court noted, however, that prohibition of governmentally-sponsored prayer does not affect individuals' rights to "engage in voluntary prayer during an appropriate moment of silence during the schoolday."

rights is in the *public interest. See e.g. Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 578 F.2d 1122, 1127 (5th Cir.1978); *Erskine v. West Palm Beach,* 473 F.Supp. 48, 51 (S.D. Fla.1979); *Kelly v. U.S. Postal Service,* 492 F.Supp. 121, 131 (S.D.Ohio 1980). This is not a matter of numbers, or determining the will of the majority. If that were the case, it might be apparent that most who attend the graduation ceremony would prefer prayer to be included.[10] However, as the Supreme Court said in *Abington School District v. Schempp,* 374 U.S. 203, 226, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963) the First Amendment "has never meant that a majority could use the machinery of the State to practice its beliefs." Neither can the Establishment Clause be circumvented under a claim of "free exercise of religion."[11] As to the requirement of *irreparable injury,* such is presumed to exist whenever First Amendment constitutional rights are infringed. The Supreme Court recognized that principle in *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), wherein the court said: "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." In sum, plaintiffs have established the last three requirements necessary for the issuance of a preliminary injunction, but this court considers that plaintiffs have failed to demonstrate such by a clear or decidedly strong showing which would tip the balance of hardships in their favor.

*Substantial Likelihood of Success on the Merits*

■ This brings us to the final requirement: whether there is substantial likeli-hood that plaintiffs will prevail on the merits.

LEMON TEST

In 1971, the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) enumerated a three prong test relative to conduct claimed to violate the Establishment Clause. Under this so-called "Lemon Test" the challenged conduct must

First: have a predominantly secular purpose;

Second: have a primary effect that neither advances, endorses nor inhibits religion; and

Third: not result in excessive entanglement of government and religion.

*Id.* at 612–13, 91 S.Ct. at 2111. Several state and lower federal court cases have applied these conditions in the context of graduation ceremonies. Some have found no trouble in striking down the practice under *Lemon.* Most recently, the Supreme Court of California ruled that graduation prayer violates the federal constitution under both the endorsement/effects prong and the entanglements prong of the test articulated in *Lemon. Sands v. Morongo Unified School Dist.,* 53 Cal.3d 863, 281 Cal.Rptr. 34, 809 P.2d 809 (Westlaw 73348) (Cal.1991).[12] In *Weisman v. Lee,* 908 F.2d 1090 (1st Cir.1990) the case now on review by the Supreme Court, a split panel declared that according to the *Lemon* standard, a benediction invoking deity delivered by a member of the clergy at an annual public school graduation violated the Establishment Clause of the First Amendment. Similarly, in *Doe v. Aldine Independent*

---

**10.** The Senior Class President at Orem High School circulated a questionnaire to graduating seniors who voted 345 to 41 to have graduation prayer. Affidavit of David J. Moss—attached Exhibit A. However, the petition offended some of the seniors who considered the ballot which was distributed to all seniors to be offensive to some who would not like to have prayer at graduation. Affidavit of Jennifer Blakelock, p. 3.

**11.** The First Amendment Right of the people to the free exercise of religion does not give them the right to have government provide them with public prayer at government functions and ceremonies, even if the majority would like it. Their free exercise is not infringed by the enforcement of the Establishment Clause ...

*Graham v. Central Community School Dist.,* 608 F.Supp. 531, 537 (S.D.Iowa 1985).

**12.** In *Sands* the court found elements of coercion and endorsement to be present in that the prayers were given by clergymen or teachers rather than by students. Also, the audience was requested to stand and participate.

*School Dist.,* 563 F.Supp. 883 (S.D.Texas 1982) school prayer by recitation or singing as part of a school's extracurricular activities was banned. In *Graham v. Central Community School Dist.,* 608 F.Supp. 531 (S.D.Iowa 1985) the court found that the invocation and benediction portions of the commencement exercises served a Christian religious purpose, not a secular purpose, and declared that it was an undeniable truth that prayer is inherently religious. In *Jager v. Douglas County School Dist.,* 862 F.2d 824 (11th Cir.1989), cert. den., 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), the court held that the practice of having prefootball game invocations with religious content at school-sponsored events to which the public was invited or admitted violated the establishment clause of the First Amendment. A so-called "equal access plan," provided that the invocation should be delivered by a randomly selected speaker who might be a student, a parent, or a school staff member, but not a clergyperson.

On the other hand, the Fifth Circuit Court of Appeals has just denied a motion for preliminary injunctive relief to ban graduation prayer under facts similar to the Alpine School District facts. *Jones v. Clear Creek Independent School Dist.,* 930 F.2d 416 (5th Cir.1991). In the *Jones* case, a written policy of the school district in question permits graduation prayer in the discretion of the graduating class so long as it is on a voluntary basis with content that is "non sectarian and non proselytizing." The court found under *Lemon* that such prayers have the secular purpose of solemnizing the public occasion, that the primary effect of such prayer does not endorse or advance religion, and that such prayers do not create excessive government entanglement with religion. In *Wood v. Mt. Lebanon Township School Dist,* 342 F.Supp. 1293 (W.D.Pa.1972), the court held, for purposes of a preliminary injunction, that the practice of including an invocation or benediction at a high school graduation exercise was not violative of the establish-

ment clause of the First Amendment. The court noted that the ceremony was completely separate from all formal requirements set by the school district for graduation and receipt by the students of a diploma and that the graduation exercise was not a part of the formal, day-to-day routine of the school curriculum to which is attached compulsory attendance. In *Grossberg v. Deusebio,* 380 F.Supp. 285 (E.D.Va. 1974), the court held that allowing invocation did not so embroil government in religious matters as to violate the Establishment Clause of the First Amendment. The court noted an absence of calculated indoctrination in the issuance of short prayers at the beginning and close of a ceremonial event such as graduation exercises.

## CEREMONIAL OCCASION EXCEPTION

In 1983, the Supreme Court upheld prayer at the opening of a state legislative session. *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). In so doing, the Supreme Court did not apply the *"Lemon* test." [13] The Alpine defendants argue that graduation ceremonies at public schools constitute ceremonial occasions analogous to the opening of legislative sessions. The Sixth Circuit Court of Appeals in substance adopted this argument in the case of *Stein v. Plainwell Community Schools,* 822 F.2d 1406 (6th Cir.1987). That court did not apply the Lemon test to prayer at graduation ceremonies, and ruled that invocations on such occasions are not per se unconstitutional. Consistent with the approach taken by the Supreme Court in *Marsh,* the Sixth Circuit regarded graduation exercises as analogous to opening legislative sessions in which prayer is a recognized tradition. *Id.* at 1409.

Based upon the foregoing, this court cannot hold that there is a substantial likelihood that plaintiffs will prevail on the merits before the Supreme Court. Because the court does not consider that a clear and decidedly strong showing has been demon-

**13.** In *Graham v. Central Community School District,* 608 F.Supp. 531, 535 (S.D.Iowa 1985) the court opined that the *Marsh* ruling obviously

"rests on the 'unique history of legislative prayer,' and the holding of that case is clearly limited to the legislative setting."

strated as to all three of the other requirements for preliminary injunction, and finds the balance of hardships to be relatively even, the court applies the traditional rather than the relaxed standard for determining issuance of a preliminary injunction. The court rules that under either standard, however, plaintiffs have not demonstrated the necessary likelihood of success for purposes of injunctive relief. It appears that there is a reasonable likelihood that the Supreme Court will abandon the *Lemon* test.[14] Beyond that possibility, however, is the likelihood that the Supreme Court simply will not apply *Lemon* in these circumstances, and will apply the reasoning of the *Marsh* and the Sixth Circuit in *Stein*, regarding graduation prayer as analogous to the ceremonial opening of legislatures or judicial sessions. Finally, if the court does apply the *Lemon* test, it may well come to the same conclusion which most recently was arrived at by the Fifth Circuit in the *Jones* case, and hold that prayer at graduation ceremonies under the circumstances presented in the case at bar would pass constitutional muster.

■■■ This court's own view of the present state of the law is that prayer with appropriate content at ceremonial graduation events does not violate the Establishment Clause under either the Supreme Court's ceremonial exception in *Marsh* or under the three pronged requirements of *Lemon*. In this court's opinion, there is a reasonable likelihood that the Supreme Court will follow its own precedent in *Marsh v. Chambers*, and regard invocations and benedictions at high school graduation ceremonies to constitute an exception analogous to opening ceremonies at legislative sessions. This court also considers that the policy of defendant School District in this case, which permits rather than requires the giving by students of prayers with content which is non proselytizing, non denominational and non doctrinal, under voluntary and non coercive circumstances,[15] does not violate the establishment of religion clause under the *Lemon* test. This court finds that prayers which may be rendered pursuant to such policy would have the secular purpose of solemnizing the occasion, that the primary effect would neither advance nor endorse religion and that there would be created no excessive entanglement of government with religion. Under the Alpine defendants' policy, excessive entanglement of government with religion is avoided because of clear guidelines as to acceptable content, no preliminary review by school officials of the prayers, and no monitoring.[16]

**14.** In *Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) the majority endorsed the *Lemon* test, but Justice Kennedy's dissent, with Justices Rehnquist, White and Scalia joining, questions the test's utility and proposes an alternative analysis. *Allegheny*, 109 S.Ct. at 3134–35. The Tenth Circuit recognized this possible erosion of *Lemon* in *Foremaster v. City of St. George*, 882 F.2d 1485, Fn. 6 at 1491 (10th Cir.1989).

**15.** In *Westside Community Schools v. Mergens*, 495 U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), a case in which the court held that high school students who wanted to form a Christian club could have meetings at the school under the Equal Access Act, Justice Kennedy in a concurring opinion stressed non-coerciveness and said:

> The second principle controlling the case now before us, in my view, is that the government cannot coerce any student to participate in a religious activity. Cf. *County of Allegheny*, supra, at ——, 109 S.Ct. 3086, 106 L.Ed.2d 472. The Act is consistent with this standard as well. Nothing on the face of the Act or in

the facts of the case as here presented demonstrate that enforcement of the statute will result in the coercion of any student to participate in a religious activity. The Act does not authorize school authorities to require, or even to encourage, students to become members of a religious club or to attend a club's meetings ...

**16.** This court agrees with the sentiments expressed by Justice Baxter in his dissent in the *Sands* case:

> Nor am I persuaded by plaintiffs' argument that any approach short of a complete ban on an religious content in public high school invocation and benedictions will inevitably involve the school and the courts in censorship and prior restraint of speech, or impermissibly entangle government in religious activity. I am satisfied that the court can fashion guidelines which can be conveyed to both those responsible for selecting the speakers for the graduation ceremony and to the speaker.
> Because no reason appears that either would intentionally violate those guidelines, there is

Based upon the foregoing, this court concludes that plaintiffs have not demonstrated a substantial likelihood that they will prevail on the merits as to the claims under the United States Constitution.

*Utah Constitutional and Statutory Provisions*

■ A somewhat similar problem is presented in the causes of action asserted under the Utah Constitution [17] and statute.[18] This court has stayed all proceedings on the ultimate merits relative to those as well as the other claims presented here, pending the definitive determinations which will be made by the United States Supreme Court. It is manifest that the forthcoming rulings by the Supreme Court will impact all pending causes of action, including the state constitutional and statutory claims. However, because this is a proceeding for preliminary injunction, the state claims will be considered at least preliminarily at this time.[19]

■ Plaintiffs claim that the state provisions are more expansive than the Estab-

lishment Clause under the United States Constitution. However, plaintiffs admit that "case law interpreting the relevant constitutional and statutory provisions in this particular context (i.e., where prayer is recited as an official part of a public school graduation ceremony) is completely lacking." Plaintiffs' Amended Memorandum in Support of Motion for Preliminary Injunction, p. 42, Fn. 9.

Article I, Section 4 of the Utah Constitution contains an establishment clause identical to the establishment clause in the United States Constitution. No doubt the Supreme Court's interpretation of the federal clause will be substantially persuasive to the Utah Supreme Court, so no separate analysis is here attempted as to the identical Utah provision.

■ With reference to the prohibition of use of public money for religious purposes set forth in Article I, section 4, as well as the Utah statute which prohibits the teaching of "sectarian, religious or denominational doctrine" in the public

---

no need to review the content of a proposed invocation in advance of its delivery. The United States Constitution does not demand that a governmental agency which sponsors a public ceremony screen its content in order to avoid any possible offense. It requires only that the governmental agency take reasonable steps to ensure that it is not knowingly conveying the impression that it sponsors or endorses a religious message, and to prevent the continuation of past practices which may have done so.
*Sands v. Morongo Unified School District,* 53 Cal.3d 863, 281 Cal.Rptr. 34, 809 P.2d 809 (1991). In *Jones v. Clear Creek Independent School Dist.,* 930 F.2d 416, 419–22 (5th Cir.1991) the court rejected the "excessive entanglement" contention presented by plaintiffs "even if school officials reviewed voluntarily submitted invocations for sectarianism and proselytization."

17. Utah Const., Art. I, Section 4 provides:
 The rights of conscience shall never be infringed. *The State shall make no law respecting and establishment of religion or prohibiting the free exercise thereof;* no religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof. *There shall be*

*no union of Church and State, nor shall any church dominate the State of interfere with its functions. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment.* No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution.
(Emphasis added.)

18. Utah Code Ann. § 53A–13–101(5) prohibits teaching of "atheistic, sectarian, religious or denominational doctrine" in the public schools.

19. This court denied plaintiff's prior motion to certify these questions to the Supreme Court of Utah, and leaves to another day more specific consideration of plaintiffs' claims under the Utah constitution and statutes. Plaintiffs chose this forum to litigate and could have achieved a state court ruling had they filed this action in the appropriate state court. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988) ("Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."); *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1149 (10th Cir.) (certification is discretionary and must be used with restraint and distinction), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).

schools, plaintiffs have made no clear showing that these prohibitions would apply to prayers at graduation exercises. To the contrary, the direction of Utah case law appears to be otherwise.[20] Short once a year ceremonial prayers do not implicate appropriation or expenditure of public monies for that purpose. Accordingly, at least for purposes of preliminary injunction, this court finds that plaintiffs have failed to demonstrate likelihood of success on the merits as to the state claims.

### Content of Prayers

 Any prayer by way of invocation and/or benediction at forthcoming graduation ceremonies should be under a policy which permits voluntary participation by students, which ensures no direct or indirect coercion, no identification with a particular religion, and that such be non sectarian, non denominational and non proselytizing in character. It should be recognized that high school students are not "babes in arms" and that in fact they are mature enough to understand that a school does not endorse or promote a religion by permitting prayer under the guidelines just described.[21] It may well be that in future graduation ceremonies prayer will be permitted on public ceremonial occasions "provided authorities have a well-defined program for ensuring on a rotating basis that persons representative of a wide range of beliefs and ethical systems are invited to participate." [22]

**20.** In *Gubler v. Utah State Teachers' Retirement,* 113 Utah 188, 192 P.2d 580 (1948), the court upheld a state law that permitted public school teachers to receive state retirement credit for years spent teaching in parochial schools. The court said:

> Under the present plan, no money is being appropriated or used to maintain any school operated or controlled by a church and no funds are used to assist in maintaining any essential element of such a school. Likewise, no public money or property has been appropriated or is being applied to any religious worship, exercise, or instruction. We fail to see how the amendment in any way breaches the wall between church and state. [*Id.,* 192 P.2d at 587.]

In *Thomas v. Daughters of Utah Pioneers,* 114 Utah 108, 197 P.2d 477 (1948) the Supreme Court of Utah refused to enjoin the use of state funds for construction of the Daughters of Utah Pioneers Museum because the project would allegedly perpetuate and benefit the Mormon faith. The court said:

> Educating one to the belief of religious freedom is not the "exercise of", "instruction in" or "worship" in any religious faith. The school history we teach our children builds up in their minds the importance of religious freedom. [*Id.,* 197 P.2d at 489.]

*See also Manning v. Sevier County,* 30 Utah 2d 305, 517 P.2d 549 (1973) (construing Article I, Section 4 to uphold use of public funds to construct hospital to be leased and operated by church health services corporation); *State v. DeMille,* 756 P.2d 81 (Utah 1988) (upholding juror prayer under Article I, Section 4).

**21.** In *Widmar v. Vincent,* 454 U.S. 263, 274, 102 S.Ct. 269, 276, 70 L.Ed.2d 440 (1981), the Supreme Court required equal access to university facilities for student religious groups because university students are "young adults ... and should be able to appreciate that the University's policy is one of neutrality toward religion." Also, in *Board of Education v. Mergens,* —— U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), with reference to high school students under the Equal Access Act, the Supreme Court said:

> We think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis. [*Id.,* 110 S.Ct. at 2372.]

**22.** Campbell, J. dissenting opinion in *Weisman v. Lee,* 908 F.2d 1090, 1099 (1st Cir.1991). After pointing out that the great problems of our day do not include over-exposure to noble aspirations expressed in prayer, but rather that "13 year old children are selling crack; that instead of doing homework, students are watching violent TV; that the tolerant ideals mentioned by the rabbi are being rejected in favor of destructive habits of mind and character," Judge Campbell opined as follows:

> Yet the question remains, is it necessary—to preserve separation of church and state—to prevent benedictions and invocations of this generous, inclusive sort? There is a tradition of such remarks at public functions going back to the Founders. *See Marsh v. Chambers,* 463 U.S. 783 [103 S.Ct. 3330, 77 L.Ed.2d 1019] (1983) (sustaining prayer at opening of state legislature's session). It seems unreasonable to say that *Marsh* applies only to state legislative sessions. One would expect it to cover other public meetings. If so, it may extend to a graduation ceremony like this. *See Stein v. Plainwell Community Schools,* 822 F.2d 1406 (6th Cir.1987) (upholding nonsectarian prayers at a public school graduation). *Id.* at 908 F.2d 1098.

Based upon the foregoing, this court concludes that plaintiffs' Motion for a Preliminary Injunction is DENIED.

IT IS SO ORDERED.