Rachel BAUCHMAN, By and Through her parent and guardian, Cheryl BAUCHMAN, Plaintiff,

v.

WEST HIGH SCHOOL, Salt Lake City School District, Richard Torgerson, William Boston, Gene Bonella, Teresa Piele, Dolores Riley, Darline Robles, Dale Manning and Mary Jo Rasmussen, Defendants.

Civ. No. 95–C–506G.

United States District Court,
D. Utah,
Central Division.

Sept. 13, 1995.

Andrew C. Hruska, New York City, and H. Thomas Stevenson, Ogden, UT, for Plaintiff.

John E.S. Robson, Salt Lake City, UT and James F. Wood, Denver, CO, for Defendants.

## NUNC PRO TUNC MEMORANDUM RE: 6/2/95 RULING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

J. THOMAS GREENE, District Judge.

A hearing on the application of plaintiff for a Temporary Restraining Order was held on June 2, 1995, at which time oral argument was presented. Plaintiff was represented by Andrew C. Hruska and H. Thomas Stevenson. Defendants were represented by John E.S. Robson and James F. Wood. Counsel had requested and were granted an immediate hearing which was fitted into the court's crowded calendar while a jury was deliberating at the conclusion of a complex civil case.

### FACTUAL BACKGROUND

Plaintiff Rachel Bauchman is a fifteen-year-old Jewish Girl who was enrolled as a sophomore during the 1994–95 school year at West High School in Salt Lake City. Since August, 1994, plaintiff has been a member of the A'Cappella Choir, an elective class that is offered for graded credit by West High. Defendant Richard Torgerson is the A'Cappella Choir director, and is responsible for sched-

uling performances and selecting music for the choir's repertoire.

Plaintiff filed a complaint on May 31, 1995 consisting of nine claims for relief, seeking injunctive relief and money damages. Plaintiff alleges that since she joined the choir, Torgerson selected explicitly religious music for the choir's repertoire, and organized public performances which included performances at religious sites. Plaintiff also alleges, in response to her expression of concern regarding the religious nature of the music and otherwise, that Torgerson publicly ridiculed and harassed her both specifically and by inference in front of plaintiff's fellow students, and incited harassment of plaintiff by other persons in the school community. Finally, plaintiff alleges that the response by defendants to plaintiff's objections not only has been inadequate, but specifically designed to expose plaintiff and her family to public ridicule and hostility for their beliefs.

The narrow focus of plaintiff's TRO motion is two songs selected by Torgerson for performance by the A'Cappella Choir at the West High School graduation ceremony on June 7, 1995. These songs, "May the Lord Bless you and Keep You," and "Friends," include these lyrics: "The Lord lift up the light of his countenance upon you and give you peace ... Amen," and "Friends are friends forever if the Lord's the Lord of them." In plaintiff's complaint and in her motion, she claims that if these two songs were to be sung at West High's graduation ceremony, her Constitutional rights guaranteed by the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution and by the Constitution of the State of Utah will be violated. After substantial argument, this court denied plaintiff's motion in an oral ruling from the bench, directing that an order be presented reflecting the court's ruling, and reserving the right to issue a written opinion. An appeal was taken prior to presentation of a proposed order.[1]

## ANALYSIS

### I. STANDARDS FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER.

The Tenth Circuit requires a movant to establish four elements as the basis for issuance of a TRO or preliminary injunction: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits. *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991); *Seneca–Cayuga Tribe v. State ex rel. Thompson,* 874 F.2d 709, 716 (10th Cir.1989); *Tri–State Generation v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986); *accord Albright v. Board of Educ. Of Granite Sch. Dist.,* 765 F.Supp. 682, 686 (D.Utah 1991).

When the first three elements are clearly satisfied, the Tenth Circuit has indicated that a more lenient "fair ground for litigation" standard should be substituted for the prerequisite of "a substantial likelihood that the moving party will prevail on the merits." *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1199 (10th Cir.1992); *Otero Savings & Loan Association v. Federal Reserve,* 665 F.2d 275, 278 (10th Cir.1981). If plaintiff cannot clearly demonstrate that the last three elements are satisfied, then the requirement of substantial likelihood of success on the merits is reviewed under the traditional standard that requires plaintiff to show a reasonable probability of success. *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen,* 640 F.2d 255, 261 (10th Cir.1981).

---

1. By Order filed with the Clerk of this court on August 18, 1995, the Tenth Circuit retained jurisdiction of the appeal from the district court's bench ruling of June 2, 1995. *Bauchman v. West High School, et al.,* No. 95–4084 (10th Cir. Aug. 18, 1995). This court had indicated an intention to issue a written opinion but did not do so when advised that an appeal had been taken and that the Circuit Court had issued an order of reversal. This nunc pro tunc opinion is now issued at the suggestion of counsel to further explain to the reviewing court the basis for this court's bench ruling.

 This court determined orally at the hearing and reiterates its finding, that the balance of hardships tips in favor of defendants. Plaintiff as a sophomore not graduating, who was given the option of not participating or participating in any way she chose to do, would be less adversely affected than defendants who had established the curriculum and graduating seniors who had practiced the traditional songs which were ceremonial and expressive of friendship and camaraderie.[2] The court determined orally at the hearing and reiterates its finding that the songs in question do not constitute prayers as such and that they were to be performed as a part of the school's approved curriculum at a ceremonial event. The court also determines that no irreparable injury[3] or violation of the public interest[4] has been shown.

Because all three of the aforesaid elements were not present in this case, the traditional rather than the more lenient standard concerning the fourth element of probability of success on the merits must be met. Based on the materials presented to the court in support of a TRO, this court determines that plaintiff failed to sustain the burden of proof to establish the likelihood of success on the merits. The reasons for that conclusion will next be discussed.

## II. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiff asserts that the selection and required performance of the two songs at graduation constitutes a violation of the Establishment Clause and Free Exercise Clause of the United States Constitution and comparable provisions of the Utah State Constitution. In order to succeed in her motion for a temporary restraining order, plaintiff must show a reasonable probability, apart from her other claims and allegations, that she would succeed on the merits in her claim that singing these songs at a graduation ceremo-

**2.** Plaintiff maintains that singing the songs would be a "slap in the face" to her personal religious sensibilities. The Supreme Court has stated that "every state action implicating religion is [not] invalid if one or a few citizens find it offensive. People may take offense at all manner of religious as well as nonreligious messages, but offense alone does not in every case show a violation. We know too that sometimes to endure social isolation or even anger may be the price of conscience or nonconformity." *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 2661, 120 L.Ed.2d 467 (1992). Plaintiff claims that there is no burden on defendants if a TRO should issue because the school choir could simply perform non-religious songs or cancel the performance. Defendants respond that although plaintiff's pain and offense may be real, it does not outweigh the damage to the remaining choir members and graduating seniors concerning songs to be performed at their one and only graduation. This court finds that plaintiff's burden in being offended does not outweigh the corresponding burden on defendants to change the scheduled graduation program and to forego the traditional songs of friendship.

**3.** Plaintiff asserts that the Supreme Court in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) compels this court to presume an irreparable harm in light of plaintiff's claim of a First Amendment violation, since the court stated that, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373, 96 S.Ct. at 2690. However, *Elrod* does not stand for the proposition that a plaintiff need only allege a First Amendment violation to automatically show irreparable harm. Indeed, the Supreme Court stated that the evidence presented at the district court hearing in *Elrod* made it "clear ... that First Amendment interests were either being threatened or in fact being impaired at the time relief was sought." The timing of plaintiff's motion in the instant case rendered impracticable the conduct of an evidentiary hearing such as occurred in the preliminary injunction proceeding in *Elrod*. Accordingly, the TRO motion is determined on the basis of plaintiff's motion and affidavit.

**4.** Plaintiff claims that the public interest would be served by "compelling the State to pursue a course of 'neutrality' toward religion, favoring neither one religion over others nor religious adherents collectively over nonadherents." *Board of Educ. v. Grumet*, — U.S. —, —, 114 S.Ct. 2481, 2487, 129 L.Ed.2d 546 (1994) (citing *Committee for Public Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792–93, 93 S.Ct. 2993, 37 L.Ed.2d 948 (1973)). This court commented at the hearing that presentation of constitutional values is always in the public interest. However, the court determines that the singing of the two songs at the West High School graduation would constitute a neutral approach to religion—neither eliminating nor favoring it. Indeed, the issuance of a TRO or injunction in this case would be adverse to the public interest because the proper focus of the graduation would be unfairly diverted from the memorial purpose of the event to an unnecessary debate over religion in the schools.

ny would constitute a violation of her constitutional rights.[5]

### The Lemon Test

■ The Supreme Court set forth the test for challenges to state action under the Establishment Clause in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Under *Lemon*, "a government practice must (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion." *Id.*

In support of her motion, plaintiff cited several Supreme Court cases wherein the *Lemon* test was applied to religious activities at public schools which were found to be violative of the Establishment Clause. *See Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (prohibiting nondenominational graduation prayer); *School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (finding required Bible reading and recitation of Lord's Prayer in public schools to be violative of Establishment Clause); *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (finding daily classroom prayers unconstitutional). Specifically, plaintiff argued that the songs at issue in this case present a First Amendment question similar to the one confronted by the Supreme Court in *Lee v. Weisman*. In *Lee*, the Court declared unconstitutional under the Establishment Clause of the First Amendment a public middle school's non-denominational graduation prayer, offered by a Rabbi, which included expressions of gratitude to "God" and the "Lord," but made no specific reference to any particular religion. 505 U.S. at 579–84, 112 S.Ct. at 2652–53.

Plaintiff argues that the songs chosen to be performed in this case do not reflect a secular purpose because the lyrics are "invocation[s] of God's blessings," *Engel*, 370 U.S. at 424, 82 S.Ct. at 1263–64, and that the songs are therefore religious activities, effectively the same as a prayer.[6] Plaintiff claims that singing the two songs at West High School's graduation advances religion in the same fashion as the graduation prayer in *Lee v. Weisman*. Therefore, plaintiff avers that performance of the songs is a religious exercise and advances religion. Further, plaintiff asserts that the performance of the songs at graduation would result in excessive entanglement because the state is participating in the affairs of religion. *See Everson v. Board of Educ. of Ewing*, 330 U.S. 1, 16, 67 S.Ct. 504, 511–12, 91 L.Ed. 711 (1947). Plaintiff also claims that because Torgerson selected "overtly Christian" music, the graduation performance effectively had been rendered a Christian service.[7]

In response to the aforesaid arguments of counsel invoking the *Lemon* test, this court regarded the songs as constituting a part of the school's curriculum and adopted the analysis of the Eighth Circuit in *Florey v. Sioux Falls School District*[8] in which the prongs of the *Lemon* test were held to be satisfied. In

5. At the hearing, plaintiff's counsel argued that the court should consider all of the allegations of the complaint in determining whether it is substantially likely that the performance of the two songs constitutes a constitutional violation. This court disagrees. If plaintiff's motion sought to enjoin or restrain the alleged actions of defendants that are the primary subject of her complaint—such as public ridicule of plaintiff for her beliefs, or the process of selecting songs based on religious criteria—then it would be appropriate and necessary for the court to take account of the portions of the complaint relating to those activities. In the present motion, however, plaintiff seeks to restrain the school from a particular, discreet activity. Plaintiff therefore must show that the particular, discreet activity alone presents a probable constitutional violation.

6. By way of affidavit, plaintiff states that she believes that Torgerson selected these songs spe-

cifically for their religious content in an effort to retaliate against plaintiff for the assertion of her First Amendment rights. Torgerson denies this allegation by affidavit, and states that the songs were selected for the secular purpose of conveying the message and feelings of friendship and good will for the future. This dispute does not constitute a material issue of disputed fact since the nature and purpose of the songs can be determined on their face.

7. Plaintiff argued that even though the text of the song "May the Lord Bless You and Keep You" is derived from Jewish scripture in the Old Testament, it has become a traditional Christian song.

8. 619 F.2d 1311 (8th Cir.1980), *cert. denied*, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980).

all events, all three prongs of the *Lemon* test are found by this court to have been satisfied in this case.[9]

### Application of the Lemon Test to Songs in a School's Curriculum

Neither the Supreme Court nor the Tenth Circuit have had occasion to determine whether choral singing at a graduation exercise constitutes a prayer which would implicate the First Amendment Establishment Clause. Singing of songs is not an "explicit religious exercise," like the graduation prayer was deemed to be by the Supreme Court in *Lee v. Weisman.* Music has purpose in education beyond the mere words or notes in conveying a feeling or mood, teaching culture and history, and broadening understanding of art. In this regard, A'Cappella singing often contains religious sentiment.[10]

In this case, the songs and performance are part of the curriculum of the West High School A'Cappella Choir. Despite references in the two songs to "God" and "Lord," the songs are not the equivalent of prayers. Neither does the fact that the source of the lyrics in "The Lord Bless You and Keep You" is scriptural automatically render that song a violation of the Establishment Clause.[11]

The Eighth Circuit has considered the application of the *Lemon* test to school curriculum and programs. *Florey v. Sioux Falls School District,* 619 F.2d 1311 (8th Cir.1980). In *Florey,* the court decided whether a public

school policy allowing the observance at school of holidays that had both a secular and religious basis, including the performance of Christmas musical programs, satisfied the requirements of the *Lemon* test. In that case, the court found the school policy primarily to further a secular purpose of educating the children concerning culture, tradition, and heritage. The court also found that the principal effect of the rules concerning observance of the holidays was to teach students about the customs and heritage of the United States and other countries, and not to teach religion. Finally, the court held that the extent of religious content in curriculum is a factor that inheres in every choice of education materials and is unavoidable, and found that the entanglement was not excessive.

In the case at bar, the selection of the two songs for graduation appears to have been made with a primarily secular purpose—to promote friendship, impart sentimental memories, encourage goodwill, teach musical appreciation, and broaden the students' understanding of music and tradition. Plaintiff's unilateral and disputed assertion of her belief that Torgerson's selection of these songs was for the purpose of conveying a religious message is not apparent from the face of the songs.

As for the primary effect of the songs, "the First Amendment does not forbid all mention of religion in public schools; it is the *advancement* or *inhibition* of religion

---

**9.** This court finds (1) that singing the songs in question was reflective of a clearly secular purpose, i.e., a traditional graduation ceremony including promotion of friendship, sentimentality, memories and encouragement of tradition and music appreciation; (2) that singing the songs in question would have a primary effect that neither advances nor inhibits religion in that the clear dominant purpose was to convey feelings of friendship and good wishes for the future among friends who were graduating; and (3) that singing the songs did not constitute an excessive entanglement with religion in that the religious content is not excessive, and is not clearly Christian or sectarian. Also, both songs had been expressly approved as part of the curriculum for the A'Cappella class.

**10.** The word "A'Cappella" means "in the chapel," and it is common knowledge that choral music is often associated with religion. Howev-

er, these characteristics do not make all religious choral music automatically unconstitutional as excessive entanglements or primarily religious.

**11.** Plaintiff proposed that religious choral music of a particular quality might be acceptable under the First Amendment, because such music has significance in culture and tradition. Conversely, plaintiff asserted that religious choral music of a low quality would not be acceptable under the First Amendment because its lack of quality demonstrates that its only purpose is religion. While the court questions the accuracy of this assertion, it must be rejected as a rule of First Amendment law. It would be impracticable for the courts to determine the constitutionality of songs and grade them as acceptable or unacceptable because of high or low musical quality notwithstanding otherwise allegedly objectionable content.

that is prohibited." *Id.*, 619 F.2d at 1315 (quoting *Committee for Public Education v. Nyquist*, 413 U.S. 756, 788, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973)) (emphasis in original). Further, the *Lemon* test "permits a given activity if 'its *principal* or *primary* effect [is] one that neither advances or inhibits religion.'" *Id.* at 1317 (quoting *Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111) (emphasis in original). It is manifest that the primary effect of the songs in question was not to advance or promote religion but to convey feelings of friendship at a ceremonial graduation exercise.

Finally, the two songs themselves and the process of selection of the songs by Torgerson for use in the choir class curriculum does not constitute an excessive entanglement with religion. Any selection of choral music for use by a public school choir will inevitably entail some involvement with religion due to the nature of choral music. The mere fact that a teacher must choose from religious and non-religious musical materials, and chooses ones with religious components for a secular purpose, does not constitute excessive entanglement under the *Lemon* test. *See Florey*, 619 F.2d at 1318.[12] From the face of the songs themselves, as well as the other materials submitted pertaining to the requested TRO relief, this court concludes that there has been no adequate showing of the elements necessary to support issuance of emergency injunctive relief.

Based on the foregoing analysis, the court denies plaintiff's motion for a temporary restraining order.

---

**12.** The Supreme Court has stated that the study of religion is not forbidden "when presented objectively as part of a secular program of education." *Schempp*, 374 U.S. at 225, 83 S.Ct. at 1573. "Public schools are not required to delete from the curriculum all materials that may offend any religious sensibility." *Florey*, 619 F.2d at 1318.